IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AIDAN ANDREWS, JORDYN BLAKEY, and FIREARMS POLICY COALITION, INC.,<br>  *Plaintiffs*,<br><br>v.<br><br>STEVEN MCCRAW, in his official capacity as Director of the Texas Department of Public Safety, JOHN FORREST in his official capacity as County Attorney of Parker County, RICHARD E. GLASER, in his official capacity as Criminal District Attorney of Fannin County, and J. BRETT SMITH, in his official capacity as District Attorney of Grayson County,<br>  *Defendants*, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  Civil Action No. 4:21-cv-1245 |

## DEFENDANT STEVEN MCCRAW'S BRIEF IN SUPPORT OF MOTION TO DISMISS

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas<br><br>BRENT WEBSTER<br>First Assistant Attorney General<br><br>GRANT DORFMAN<br>Deputy First Assistant<br>Attorney General<br><br>SHAWN COWLES<br>Deputy Attorney General for<br>Civil Litigation<br><br>THOMAS A. ALBRIGHT<br>Chief-General Litigation Division | RYAN G. KERCHER<br>Texas Bar No. 24060998<br><br>General Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, TX 78711-2548<br>Phone: (512) 463-2120<br>Fax: (512) 320-0667<br>Email:Ryan.Kercher@oag.texas.gov<br><br><br><br><br><br><br><br>**COUNSEL FOR DEFENDANT** |

## **TABLE OF CONTENTS**

DEFENDANT STEVEN McCRAW'S BRIEF IN SUPPORT

I. BACKGROUND ..................................................................................................... 1

II. STANDARD OF REVIEW .................................................................................... 4

III. ARGUMENTS & AUTHORITIES ........................................................................ 4

A. The two-step inquiry to Plaintiff's Second Amendment claims ................... 4

B. Count 1 fails to state a claim because, facially and as-applied to Plaintiff's, The 18-to-20-year-old carry ban does not violate the Second or Fourteenth Amendments ................................................................................................. 5

    1. *The Age-Based Restriction Is Outside the Scope of the Second Amendment* .......................................................................................... 5

    2. *The Age-Based Restriction Passes Intermediate Scrutiny* ..................... 7

C. Count 2 fails to state a claim because, facially and as-applied to Plaintiff's Blakey and FPC's female members, the 18-to-20-year-old carry ban does not violate the Second or Fourteenth Amendments ................................... 12

    1. *Plaintiffs' Allegations Do Not alter the Step 1 Analysis* ...................... 12

    2. *Plaintiffs' Allegations Do Not Alter the Step 2 Analysis* ..................... 13

IV. CONCLUSION ..................................................................................................... 14

# **TABLE OF AUTHORITIES**

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 4
*Barron v. City of Baltimore*, 32 U.S. 243, 247 (1833) ............................................................ 6
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 4
*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..................................................... passim
*In re Cao*, 619 F.3d 410, 430 (5th Cir. 2010) ........................................................................ 11
*McDonald v. City of Chicago*, 130 S. Ct. 3020, 3050 (2010) .................................................. 5
*Nat'l Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms,
 & Explosives ("BAFT")*, 700 F.3d 185, 194 (5th Cir. 2012) ............................... 4, 12, 13
*Nat'l Rifle Ass'n of America, Inc. v. McCraw ("McCraw")*,
 719 F.3d 338 (5th Cir. 2013), *cert denied* 571 U.S. 1196 (2014) ......................... passim
*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005) ........................................................... 4
*U.S. v. Booker*, 644 F.3d 12, 23 (1st Cir. 2011) .................................................................... 14
*U.S. v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010) ................................................................. 5
*U.S. v. Moreno*, 811 F. App'x 219, 224 (5th Cir. 2020) ......................................................... 4
*United States v. Skoien*, 614 F.3d 638, 641–42 (7th Cir. 2010) ............................................. 7

Statutes

Tex. Gov't Code § 411.172(a) .................................................................................................. 2
Tex. Penal Code § 46.02(a) ..................................................................................................... 2

Other Authorities

12th Leg., R.S., ch. 34, § 1 ....................................................................................................... 6
1792 Militia Act ....................................................................................................................... 7
18 PA. CONS. STAT. § 6109 ................................................................................................... 11
1871 Tex. Gen. Laws 25, 25, reprinted in 6 H.P.N. Gammel,
 The Laws of Texas 1822-1897, at 927, 927 (Austin, Gammel Book Co. 1898) ......... 6
ALASKA STAT. § 18.65.705 ................................................................................................... 10
ARIZ. REV. STAT. § 13-3112 .................................................................................................. 10
ARK. CODE § 5-73-309(3) ...................................................................................................... 10
COLO. REV. STAT. § 18-12-203(1) ......................................................................................... 10
CT GEN. STAT. § 29-28 .......................................................................................................... 10
FLA. STAT. § 790.06(2)(b) ..................................................................................................... 10
GA. CODE § 16-11-129(b)(2)(A) ............................................................................................ 10
HAW. REV. STAT. § 134-2(d) ................................................................................................. 10
IDAHO CODE § 18-3302(11)(a) .............................................................................................. 10
IOWA CODE § 724.8 ............................................................................................................... 10
KAN. STAT. § 75-7c04 ........................................................................................................... 10
KY. REV. STAT. § 237.110(4) ................................................................................................ 10
LA. REV. STAT. § 40:1379.3 .................................................................................................. 10
MASS. GEN. LAWS ch. 140, § 131 ......................................................................................... 11
MICH. COMP. LAWS § 28.425b(7) ......................................................................................... 11

Minn. Stat. § 624.714 .................................................................................................... 11
Miss. Code § 45-9-101(2) ............................................................................................ 11
Mo. Rev. Stat. § 571.101 ............................................................................................. 11
N.C. Gen. State. § 14-415.12(a) ................................................................................. 11
N.J. Stat. § 2C:58-4 ..................................................................................................... 11
N.M. Stat. § 29-19-4 .................................................................................................... 11
N.Y. Penal Law § 400.00 ............................................................................................ 11
Neb. Rev. Stat. § 69-2433(1) ....................................................................................... 11
Nev. Rev. State. § 202.3657 ........................................................................................ 11
Off. Of Juvenile Justice & Delinquency Programs,
   *Estimated number of arrests by offense and age group, 2010,*
   *Gendera: All*, U.S. Dep't of Just. (Nov. 16, 2020) ............................................... 10
Ohio Rev. Code § 2923.125(D) ................................................................................... 11
Okla. State. tit. 21, § 1290.9 ....................................................................................... 11
Or. Rev. Stat. § 166.291 .............................................................................................. 11
R.I. Gen. Laws § 11-47-11 .......................................................................................... 11
S.C. Code § 23-31-215 ................................................................................................. 11
Tenn. Code § 39-17-1351 ............................................................................................ 11
*The Bill of Rights and the Fourteenth Amendment*,
   101 Yale L. J. 1193, 1198–217 (1992) .................................................................... 6
Utah Code § 53-5-704 ................................................................................................. 11
Va. Code § 18.2-308(D) .............................................................................................. 11
W. Va. Code § 61-7-4; Wyo. Stat. § 6-8-104 .............................................................. 11
Wash. Rev. Code § 9.41.070 ....................................................................................... 11

### Rules
Fed. R. Civ. P. 12(b)(6) ................................................................................................ 4

### Constitutional Provisions
U.S. Const. amend. XIV, § 2 ....................................................................................... 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AIDAN ANDREWS, JORDYN BLAKEY, and FIREARMS POLICY COALITION, INC.,<br>*Plaintiffs*,<br><br>v.<br><br>STEVEN MCCRAW, in his official capacity as Director of the Texas Department of Public Safety, JOHN FORREST in his official capacity as County Attorney of Parker County, RICHARD E. GLASER, in his official capacity as Criminal District Attorney of Fannin County, and J. BRETT SMITH, in his official capacity as District Attorney of Grayson County,<br>*Defendants*, | § § § § § § § § § § § § § § § § § § | Civil Action No. 4:21-cv-1245 |

### DEFENDANT MCCRAW'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant Steven McCraw ("McCraw") files this Brief in Support of Motion to Dismiss to Plaintiffs' Complaint. Dkt. #1. In support, McCraw offers the following for the Court's consideration:

### I.  BACKGROUND

The statutory framework challenged by Plaintiffs' lawsuit is carefully described by the same Fifth Circuit opinion that entirely forecloses their claims, *Nat'l Rifle Ass'n of America, Inc. v. McCraw ("McCraw")*, 719 F.3d 338 (5th Cir. 2013), *cert denied* 571 U.S. 1196 (2014).

> In 1871, the State of Texas first prohibited individuals from carrying handguns in public. The current version of this proscription, codified in 1973, provides that a "person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun . . . if the person is not: (1) on the person's own

1

> premises or premises under the person's control; or (2) inside of or directly en route to a motor vehicle or watercraft that is owned by the person or under the person's control." Tex. Penal Code § 46.02(a). This crime is punishable by imprisonment for up to a year and a fine of up to $4,000. *Id.* § 46.02(b); *see id.* § 12.21.
>
> In 1995, Texas created an exception to this general criminal prohibition when it enacted the concealed licensing program. The program allows persons who acquire concealed carry licenses to carry concealed handguns in public. Tex. Gov't Code § 411.172(a). Licenses cost $140 each and applicants must submit their fingerprints and their criminal, psychiatric treatment, and drug treatment histories. *Id.* § 411.174. They must also successfully complete a 10–hour course, which includes both a written exam and a practical component to demonstrate proficiency. *Id.* § 411.174(a)(7); *see id.* § 411.188. Moreover, in order to qualify for a license, an applicant must, among other things, be "at least 21 years of age" and "fully qualified under applicable federal and state law to purchase a handgun." *Id.* § 411.172(a).
>
> During legislative debate on the concealed licensing program, several legislators advocated for the 21–year–old minimum-age requirement because they believed that younger individuals were generally not mature enough to carry and handle handguns in public. In 2005, Texas relaxed the licensing requirements to allow persons under 21 who had military training to apply for concealed handgun licenses, *id.* § 411.172(g), because this group's "extensive training in handling weapons" mitigated the legislature's concern that persons under 21 generally were not sufficiently mature to handle guns responsibly. Nevertheless, Texas's statutory scheme in effect prohibits the majority of 18–20–year–olds from carrying a handgun in public: the general criminal provision sets as the default rule that Texans may not carry a handgun in public, and the civil licensing law makes 18–20–year–olds ineligible for the concealed handgun license exception to this default rule.

*Id.* at 342–43 (footnotes omitted).

In 2010, three individuals aged 18 to 20 and the National Rifle Association ("NRA") on behalf of its 18-to-20-year-old members filed a constitutional challenge to Texas' restriction on carrying handguns in public ("Age-Based Restriction"). *See McCraw*, 719 F.3d at 343. "Each of the three individual plaintiffs claim[ed] they

2

wish[ed] to carry a handgun for self-defense but were unable to apply for one solely because of their age." *Id.* Like the plaintiffs in this case, the *McCraw* plaintiffs argued that the 18-to-20-year-olds carry ban violated the Second Amendment by infringing on their purported right to carry handguns in public. *Compare id.* at 346, *with* Dkt. #1, ¶¶1–19. After the U.S. District Court for the Northern District of Texas upheld the Age-Based Restriction, the plaintiffs appealed. *McCraw*, 719 F.3d at 344. On appeal, the Fifth Circuit carefully considered the challengers' claim, applying the Supreme Court's seminal Second Amendment opinion in *District of Columbia v. Heller*, 554 U.S. 570 (2008). *Id.* at 345–49. Considering historic traditions, *McCraw* concluded that "the conduct burdened by the Texas scheme likely falls outside the Second Amendment's protection." *Id.* at 347. Nevertheless, in an abundance of caution, the Fifth Circuit went on apply intermediate scrutiny to the statutory scheme and "affirm[ed] the district court's conclusion that it does not violate the Second Amendment." *Id.* at 349.

Represented by the same counsel,[1] Plaintiffs bring an almost identical challenge. Plaintiffs "acknowledge that their facial challenge to Texas' Age-Based Restriction is foreclosed in this Court by [*McCraw*]," but contend that this Court should strike down the laws as applied to 18-to-20-year-old women. Dkt. #1, ¶19. But Plaintiffs' as-applied challenge cannot overcome *McCraw*'s reasoning, which applies with equal force. Defendant McCraw respectfully asks this Court to grant his motion to dismiss.

---

[1] *Compare NRA*, 719 F.3d at 341, *with* Dkt. #1, 21–22.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

## III.  ARGUMENTS & AUTHORITIES

### A.  The two-step inquiry applicable to Plaintiffs' Second Amendment claims.

The Fifth Circuit uses a two-step inquiry when reviewing Second Amendment challenges. *Nat'l Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives ("BAFT")*, 700 F.3d 185, 194 (5th Cir. 2012); *U.S. v. Moreno*, 811 F. App'x 219, 224 (5th Cir. 2020). "[T]he first inquiry is whether the conduct at issue falls within the scope of the Second Amendment right," which is determined by "look[ing] to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." *BAFT*, 700 F.3d at 194. (citations omitted). "If the challenged law burdens conduct that falls outside the Second Amendment's scope, then the law passes constitutional muster." *Id.* at 195. "If the law burdens conduct

4

that falls within the [] scope," courts proceed to the second inquiry, "apply[ing] the appropriate level of means-ends scrutiny." *Id.* The level of scrutiny "'depends upon the nature of the conduct being regulated and the degree to which the challenged law burdens the right.'" *Id.* (quoting *U.S. v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010)).

**B.   Count 1 fails to state a claim because, facially and as-applied to Plaintiffs, the 18-to-20-year-old carry ban does not violate the Second or Fourteenth Amendments.**

*1. The Age-Based Restriction Is Outside the Scope of the Second Amendment*

Here, Plaintiffs' claim fails at the first level of inquiry, "whether the conduct at issue falls within the scope of the Second Amendment right," as applied to the States through the Fourteenth Amendment. *See McCraw*, 719 F.3d at 347; *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3050 (2010). "Here, the Texas statutes collectively prohibit carrying a handgun in public by 18–20-year-olds." *See McCraw*, 719 F.3d at 347; Dkt #1, ¶78 (describing the challenge to the restriction on 18-to-20-year-olds who desire to carry handguns on public streets and public property). The Fifth Circuit has twice "held that statutes enacted to safeguard the public using age-based restrictions on access to and use of firearms are part of a succession of 'longstanding prohibitions,' *Heller,* 554 U.S. at 626, 128 S.Ct. 2783, that are likely outside the scope of the Second Amendment, because such restrictions are 'consistent with' both the 'longstanding tradition of targeting select groups' ability to access and to use arms for the sake of public safety' and the 'longstanding tradition of age-and safety-based restrictions on the ability to access arms.'" *McCraw*, 719 F.3d at 347 (quoting *BATF*, 700 F.3d at 203).

5

"In *BAFT*, the [Fifth Circuit] held that a federal law that restricted 18–20–year–olds' access to and use of firearms by prohibiting federally licensed firearms dealers from selling handguns to those under 21 was consistent with these traditions, because Congress had passed the law to deter violent crime by restricting the ability of minors under 21, who were relatively immature, to buy handguns." *McCraw*, 719 F.3d at 347. And in *McCraw*, the Fifth Circuit held that the same Texas scheme challenged by Plaintiffs likely fell outside the Second Amendment's protection for the same reason.[2] *Id.* For over 150 years, the State of Texas has prohibited people from carrying handguns in public and only recently has lifted that restriction for select persons that simply do not include Plaintiffs. *See id.* at 342–43; Act approved Apr. 12, 1871, 12th Leg., R.S., ch. 34, § 1, 1871 Tex. Gen. Laws 25, 25, reprinted in 6 H.P.N. Gammel, The Laws of Texas 1822-1897, at 927, 927 (Austin, Gammel Book Co. 1898) (making it generally unlawful for a person to "carry[] on or about his person, saddle,

---

[2] Indeed, the States have a much stronger claim to the prerogative to choose 21 rather than 18 as the age of majority to exercise the right to bear arms than does the federal government. The Second Amendment makes no pretense of accommodating the States' police power precisely because it was designed to constrain only the federal government. *See Barron v. City of Baltimore*, 32 U.S. 243, 247 (1833); Akhil Reed Amar, *The Bill of Rights and the Fourteenth Amendment*, 101 Yale L. J. 1193, 1198–217 (1992). By interpreting the Fourteenth Amendment to incorporate a constitutionally protected right against the States, *McDonald* did not revoke the States' prerogative to choose 21 as the age of majority for the exercise of that right. This is clear from the language of the Fourteenth Amendment itself, which reflects that States will not be penalized for withholding the right to vote from people under 21. *See* U.S. Const. amend. XIV, § 2 ("[W]hen the right to vote . . . is denied to any of the male inhabitants of such State, *being twenty-one years of age*, and citizens of the United States, . . . the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens *twenty-one years of age* in such State.") (Emphasis added).

or in his saddle bags, any pistol . . ."). The Age-Based Restriction is consistent with longstanding tradition in this State and does not implicate Plaintiffs' constitutional rights.

Plaintiffs' reference to the 1792 Militia Act (at Dkt. #1, ¶¶65–66) misses the mark for several reasons. First, Plaintiffs' approach is premised on the notion that the necessary historical inquiry must focus on the 1790s. But *Heller* belies that idea. Not only did *Heller* consider a wide span of historical texts penned between the early 18th and the late 19th centuries, 554 U.S. at 581–619, but it also recognized the presumptive validity of "longstanding" restrictions first codified much later. *Id.* at 626–27 & n.26; *see United States v. Skoien*, 614 F.3d 638, 641–42 (7th Cir. 2010) (*en banc*) (accurately observing that restrictions on Second Amendment freedoms that are presumptively constitutional under *Heller* "need not mirror limits that were on the books in 1791").

### 2. *The Age-Based Restriction Passes Intermediate Scrutiny*

Second, even assuming the 1790s were the only appropriate focus of the relevant historical analysis, embracing the Militia Act of 1792 would limit the beneficiaries of the right to keep and bear arms in unjust—indeed, indefensible— ways. The Act provided that "each and every *free able-bodied white male* citizen of the respective States . . . who is or shall be of the age of eighteen years, *and under the age of forty-five years* . . . shall severally and respectively be enrolled in the militia." 1 Stat. at 271 (emphasis added) (quoted in Dkt. #1, ¶65). The Militia Act does reflect that, in 1792, every 18-to-20-year-old to which it applied would be expected to

7

"provide himself with a good musket or firelock." *Id*. But the class of people to whom the Act applied was quite limited: it included only able-bodied white males who had not yet turned 46. Among other things, this completely undermines Plaintiffs' second Count, which advances the claim that the challenged carry ban is unconstitutional as applied to women. It also establishes that age-based restrictions on bearing arms are traditional and longstanding. And, of course, all of this ignores that a statutory right can always be conferred that extends above the constitutional floor. In short, the Militia Act of 1792 does not advance Plaintiffs' cause.

Even assuming Plaintiffs' claim proceeds to the second step of the inquiry, the factual allegations do not create the reasonable inference of a Second Amendment violation there either. The Fifth Circuit has already resolved the question of what level of scrutiny to apply here. In assessing the Second Amendment challenge to the same statutory framework in *McCraw*, the Fifth Circuit applied intermediate scrutiny because (1) the age-based restriction has "only a temporary effect," (2) it "restricts only the ability to carry handguns in public," and (3) is "not a complete ban on handgun use; it bans such use only outside a home or vehicle." 719 F.3d at 348. "In order to withstand intermediate scrutiny, the Texas scheme must be reasonably adapted to achieve an important government interest." *Id*. "The Texas laws advance the same important government objectives as the one upheld in *BAFT* under the intermediate scrutiny standard, namely, advancing public safety by curbing violent crime." *Id*.

8

"Texas's handgun carriage scheme is substantially related to this important government interest in public safety through crime prevention," as "those under 21 years of age are more likely to commit violent crimes with handguns than other groups." *McCraw*, 719 F.3d at 348–49. The state law has a "narrow ambit" because it targets a discrete category of 18–20-year-olds, regulating only the carrying of guns in public, and restricts only one type of gun—handguns. *Id.* at 349. And, while "Texas could have taken other, less restrictive approaches, such as allowing 18–20-year-olds to get a license if they demonstrate a particularly high level of proficiency and responsibility with guns," "the state scheme must merely be reasonably adapted to its public safety objective to pass constitutional muster under an intermediate scrutiny standard." *Id.* "Texas need not employ the least restrictive means to achieve its goal." *Id.*

"Texas determined that a particular group was generally immature and that allowing immature persons to carry handguns in public leads to gun violence." *McCraw*, 719 F.3d at 349. "Therefore, it restricted the ability of this particular group to carry handguns outside their vehicles in public." *Id.* "This means is substantially related to Texas's stated goal of maintaining public safety, and it still allows 18–20–year–olds to have handguns in their cars and homes and to apply for concealed handgun licenses as soon as they turn 21." *Id.* "The Texas scheme thus survives intermediate scrutiny." *Id.*

Plaintiffs offer nothing to distinguish their challenge from this recent, published, binding authority from the Fifth Circuit. Instead, they cite arrest statistics

for a single year to note that in 2019, 18-to-20-year-olds were arrested for fewer violent crime arrests than 21-to-24-year-olds. *See* Dkt. #1, ¶81 (320.8 out of every 100,000 18-to-20-year-olds were arrested for violent crimes in 2019, compared to 338.9 out of every 100,000 21-to-24-year-olds). But reviewing other years from the same data source suggests this cherry-picked year may have been anomalous. In 2010, for example, 563.2 out of every 100,000 18-to-20-year-olds were arrested for violent crimes compared to 494.9 out of every 100,000 21-to-24-year-olds. *See* Off. Of Juvenile Justice & Delinquency Programs, *Estimated number of arrests by offense and age group, 2010, Gendera: All*, U.S. Dep't of Just. (Nov. 16, 2020), https://tinyurl.com/2010ArrestRates. Plaintiffs also fail to provide any Texas-specific data.

The constitutionality of Texas' handgun restriction, which has been in place effectively since 1871, does not turn on the existence of outlier statistics, recent trends, or statistics aggregated from among all fifty states. Indeed, part of statistical differences reflected in the data could well be the *result* of same age-based prohibitions challenged by Plaintiffs, as Texas is far from alone in retaining the common-law age of 21 as the age of majority of purposes of eligibility for concealed handgun licenses. Thirty-six other States have done so as well. *See* ALASKA STAT. § 18.65.705; ARIZ. REV. STAT. § 13-3112; ARK. CODE § 5-73-309(3); COLO. REV. STAT. § 18-12-203(1); CT GEN. STAT. § 29-28; FLA. STAT. § 790.06(2)(b); GA. CODE § 16-11-129(b)(2)(A); HAW. REV. STAT. § 134-2(d); IDAHO CODE § 18-3302(11)(a); IOWA CODE § 724.8; KAN. STAT. § 75-7c04; KY. REV. STAT. § 237.110(4); LA. REV. STAT. § 40:1379.3;

10

MASS. GEN. LAWS ch. 140, § 131; MICH. COMP. LAWS § 28.425b(7); MINN. STAT. § 624.714; MISS. CODE § 45-9-101(2); MO. REV. STAT. § 571.101; NEB. REV. STAT. § 69-2433(1); NEV. REV. STATE. § 202.3657; N.J. STAT. § 2C:58-4; N.M. STAT. § 29-19-4; N.Y. PENAL LAW § 400.00; N.C. GEN. STATE. § 14-415.12(A); OHIO REV. CODE § 2923.125(D); OKLA. STATE. TIT. 21, § 1290.9; OR. REV. STAT. § 166.291; 18 PA. CONS. STAT. § 6109; R.I. GEN. LAWS § 11-47-11; S.C. CODE § 23-31-215; TENN. CODE § 39-17-1351; UTAH CODE § 53-5-704; VA. CODE § 18.2-308(D); WASH. REV. CODE § 9.41.070; W. VA. CODE § 61-7-4; WYO. STAT. § 6-8-104. The Texas scheme is reasonably adapted its public safety objective, and that is all the Second Amendment requires.

Finally, while Plaintiffs characterize their first Count as both a facial and "as-applied" challenge, the distinction is without a difference here. *See* Dkt. #1, 16. While "it is well-established that the facial upholding of a law does not prevent future as-applied challenges," it *does* "preclude one resting upon the same asserted principle of law." *In re Cao*, 619 F.3d 410, 430 (5th Cir. 2010). The arguments and legal principles raised in this case rests on the same principle of law rejected by the Fifth Circuit in *McCraw*. Indeed, Plaintiffs explicitly concede that their facial challenge is "foreclosed" by that holding and contend that only their "as applied claim with respect to 18-to-20-year-old women asserted by Plaintiffs Blakey and FPC on behalf of its similarly situated members" remains viable. Dkt. #1, ¶19. In so doing, they effectively concede that their first Count, including its "as applied" permutation, fails to state a claim until unless *McCraw* is "overruled by a court competent to do so." *See id.* And, as discussed below, the "as applied" challenge brought on behalf of the female

11

individual plaintiff and female members of the FPC, while creative, still fails to state a claim.

**C. Count 2 fails to state a claim because, facially and as-applied to Plaintiffs Blakey and FPC's female members, the 18-to-20-year-old carry ban does not violate the Second or Fourteenth Amendments.**

Plaintiffs' Count 2 fairs no better. Plaintiffs' allegations regarding the criminal propensities of young women do not bring the Age-Based Restriction within the scope of the Second Amendment, do not diminish the important government interest achieved by the Age-Based Restriction, and do not render the Age-Based Restriction less reasonably adapted to achieve that interest.

*1. Plaintiffs' Allegations Do Not Alter the Step 1 Analysis*

*Heller* noted, "the right secured by the Second Amendment is not unlimited," and turned to historical and traditional limitations to trace the right's outline. *Heller*, 554 U.S. at 626. The Fifth Circuit has repeatedly held that age-based restrictions affecting 18-20-year-olds fall outside the scope of the Second Amendment because they fit squarely into the historical and traditional limitations beyond constitutional protection. *BAFT*, 700 F.3d at 203; *McCraw*, 719 F.3d at 347.

Plaintiffs' pleadings do not plausibly suggest the particular allegations purportedly pertaining to Ms. Blakey or the other female members of FPC somehow extend the reach of Second Amendment protections. As noted above, the Age-Based Restriction is actually *less* restrictive than the sole traditional prohibition cited by Plaintiffs when it comes to allowing firearms possession for women. Perhaps that is why, when the Fifth Circuit followed *Heller*'s analysis in *BAFT* and *McCraw* in upholding traditional and longstanding age-based restrictions on carrying firearms,

12

the Court made no mention of parsing such historic restrictions with modern (or passing) demographic distinctions. *Heller*, 554 U.S. at 626; *BAFT*, 700 F.3d at 203; *McCraw*, 719 F.3d at 347. Instead, this substantial, recent, and binding precedent provides for a first step that asks simply whether age-based restrictions are historical and longstanding—not whether the restriction follows the outlines of a particular demographic or statistical trend putatively favoring a plaintiff. Longstanding age-based restrictions on carrying firearms leave the Age-Based Restriction outside the scope of Second Amendment protections, and Plaintiffs' gender-based allegations do nothing to alter *McCraw*'s conclusion that the Age-Based Restriction does not implicate the Second Amendment.

2. *Plaintiffs' Allegations Do Not Alter the Step 2 Analysis*

Even if it implicates the Second Amendment, the Age-Based Restriction continues to pass intermediate scrutiny. Plaintiffs offer statistics purportedly showing that the Age-Based Restriction unnecessarily restricts women. But, "Texas need not employ the least restrictive means to achieve its goal." *McCraw*, 719 F.3d at 349. As discussed above, the Fifth Circuit has already determined, in a facial challenge, that the Age-Based Restriction is reasonably adapted to achieve an important government interest. *Id*. The Age-Based Restriction serves "the important government interest in public safety through crime prevention." *Id*. at 348. Plaintiffs' gender-based allegations do not appear to challenge this important government interest, but instead challenge whether the Age-Based Restriction is reasonably adapted to achieve this important government interest.

13

The Age-Based Restriction is reasonably adapted to achieve its purpose. "[T]he Second Amendment permits categorical limits on the regulation of gun possession by classes of persons...rather than requiring that restrictions on the right be imposed on an individualized, case-by-case basis." *U.S. v. Booker*, 644 F.3d 12, 23 (1st Cir. 2011); *accord BAFT*, 700 F.3d at 204 (quoting *Booker* and citing *Skoien*); *see also Skoien*, 614 F.3d at 640, 641. *BAFT* concluded that age restrictions do not even amount to a categorical ban, and so resemble conditions and qualifications on commercial sales that are presumptively lawful under *Heller*. *BAFT*, 700 F.3d at 206. Indeed, *BAFT* held that 18-20-year-olds prevented from purchasing handguns under a federal statute were a "target" with a "narrow ambit." *BAFT*, 700 F.3d at 205.

To satisfy intermediate scrutiny, the Age-Based Restriction need not parse the narrow ambit of its target with every potential demographic subdivision in hopes of divining ever-finer margins of crime prevention. Nevertheless, Plaintiffs hope to apply a level of fine-grain acuity to Texas policymaking that is nowhere required by precedent. But the Fifth Circuit's adoption of an analysis that allows for categorical regulation, and that rejects personalized, case-by-case regulation, simply leaves Plaintiffs no avenue to carve themselves out of the already "substantial[ly] tailor[ed]" Age-Based Restriction. *McCraw*, 719 F.3d at 349. The Age-Based Restriction therefore satisfies intermediate scrutiny as applied to Plaintiffs' gender-based claims in Count 2.

## IV.  CONCLUSION

For all these reasons, Defendant McCraw respectfully asks this Court to grant this motion and dismiss the claims against him with prejudice.

Respectfully submitted:

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation Division


/s/ *Ryan G. Kercher*
RYAN G. KERCHER
Texas Bar No. 24060998
Assistants Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
Ryan.Kercher@oag.texas.gov

***Counsel for Defendant
Steven McCraw***

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2021, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

/s/ *Ryan G. Kercher*
RYAN G. KERCHER

15