IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AIDAN ANDREWS, JORDYN BLAKEY, and FIREARMS POLICY COALITION, INC., *Plaintiffs*, | § § § § | |
| v. | § § | |
| STEVEN MCCRAW, in his official capacity as Director of the Texas Department of Public Safety, JOHN FORREST in his official capacity as County Attorney of Parker County, RICHARD E. GLASER, in his official capacity as Criminal District Attorney of Fannin County, and J. BRETT SMITH, in his official capacity as District Attorney of Grayson County, *Defendants*, | § § § § § § § § § § § § § | Civil Action No. 4:21-cv-1245 |

---

**DEFENDANT STEVEN MCCRAW'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant
Attorney General

SHAWN COWLES
Deputy Attorney General for
Civil Litigation

THOMAS A. ALBRIGHT
Chief-General Litigation Division

RYAN G. KERCHER
Texas Bar No. 24060998
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
Phone: (512) 463-2120
Fax: (512) 320-0667
Email:Ryan.Kercher@oag.texas.gov

**COUNSEL FOR DEFENDANT**

# TABLE OF CONTENTS

Table of Contents.................................................................................................ii

Table of Authorities..........................................................................................iv

DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ...................1

INTRODUCTION .......................................................................................................1

I.     STATEMENT OF FACTS.....................................................................................2

A.    Statutory Framework .................................................................................2

B.    Legislative History .....................................................................................3

     1.    *Before* McCraw I ..............................................................................3

     2.    *Since* McCraw I ...............................................................................5

C.    Nationwide Context ...................................................................................5

II.    ARGUMENT AND AUTHORITY.........................................................................6

A.    Plaintiffs' Facial Challenge Fails ............................................................6

     1.    *The Second Amendment,* Heller, *and* McDonald ...............................6

     2.    *The BATF* Test...................................................................................7

     3.    *The* BATF *Test Has Twice Upheld Under-21 Firearms Regulation*....8

         a.  *BATF* upheld limitations on the sale of firearms to Under-21s.....8

         b.  *McCraw 1* upheld Texas' prohibition of publicly-carried firearms by Under-21s ...................................................................................11

     4.    *The* BATF *Test Shows the Challenged Provisions Are Constitutional* ...............................................................................12

         a.  Step 1: The challenged provisions do not burden conduct protected by the Second Amendment .............................................12

         b.  Step 2: The  challenged provisions require only intermediate scrutiny, which they pass ...................................................................12

B.    Plaintiffs' As-Applied Challenge Fails ..................................................13

     1.    *The As-Applied Claim Fails as an Overbreadth Claim* ......................14

     2.    *The As-Applied Claim Fails as a Disparate Impact Claim* ................14

     3.    *Intermediate Scrutiny Applies to Plaintiffs' As-Applied Challenge*.....16

     4.    *The Challenged Provisions Survive Intermediate Scrutiny*................17

a.  Plaintiffs' first numbers game: very few people commit
    any crimes ................................................................................ 17

b.  Plaintiffs' second numbers game: comparing apples to oranges.... 18

CONCLUSION ................................................................................................ 20

CERTIFICATE OF SERVICE .............................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*Dist. of Columbia v. Heller,*
  554 U.S. 570, 592 (2008) ............................................................. 7, 8, 10, 14

*Ezell v. City of Chicago,*
  651 F.3d 684 (7th Cir. 2011) ................................................................. 7

*Gaines v. City of Vicksburg,*
  68 F.3d 469 (5th Cir. 1995) ................................................................. 15

*Harris v. McRae,*
  448 U.S. 297 (1980) ........................................................................... 15

*Heller v. Dist. of Columbia,*
  670 F.3d 1244 (D.C. Cir. 2011) ....................................................... 7, 8, 10

*Lewis v. Casey,*
  518 U.S. 343 (1996) ........................................................................... 15

*M.L.B. v. S.L.J.,*
  519 U.S. 102 (1996) ........................................................................... 15

*Maher v. Roe,*
  432 U.S. 464 (1977) ........................................................................... 15

*McDonald v. City of Chicago,*
  561 U.S. 742 (2010) ............................................................................. 7

*NRA v. BATF,*
  700 F.3d 185 (5th Cir. 2012) ........................................................ passim

*NRA v. McCraw,*
  719 F.3d 338 (5th Cir. 2012) ........................................................ passim

*Personnel Adm'r of Massachusetts v. Feeney,*
  442 U.A. 256 (1979) ........................................................................... 15

*Rinaldi v. Yeager,*
  384 U.S. 305 (1966) ........................................................................... 15

*U.S. v. Chester,*
  628 F.3d 673 (4th Cir. 2010) ................................................................. 7

*U.S. v. Emerson,*
  270 F.3d 203 (5th Cir. 2001) ................................................................. 9

*U.S. v. Greeno,*
  679 F.3d 510 (6th Cir. 2012) ................................................................. 7

*U.S. v. Marzzarella,*
  614 F.3d 85 (3d Cir. 2010) ................................................................... 7

*U.S. v. Reese,*
  627 F.3d 792 (10th Cir. 2010) ............................................................... 7

*Washington v. Davis,*
  46 U.S. 299 (1976) ............................................................................. 15

**Statutes**

1995 Tex. Gen. Laws 1998, 1999 ............................................................... 4

Act of May 16, 1995, 74th Leg. R.S. ch. 229, § 1 ...................................... 3

Tex. Gov't Code § 411.172(a)(2) .............................................................. 3

Tex. Gov't Code § 411.172(i) ................................................................... 5

Texas Government Code 46.15(b)(6)(A) .................................................................. 3
Texas Government Code subsections 411.172(a) ..................................................... 3
Texas Penal Code Section 46.02 ......................................................................... 2, 3

## Other Authorities

1871 Tex. Gen. Laws 25 ............................................................................................. 3
1973 Tex. Gen. Laws 883, 963 .................................................................................. 3
74th Leg. R.S. (May 1, 1995) .................................................................................... 4
Act of May 24, 2073, 63d Leg., R.S., ch. 399, § 1 ................................................... 3
Acts 2015, 84th Leg., R.S., Ch. 437 (H.B. 910) ....................................................... 5
Acts 2021, 87th Leg., R.S., Ch. 203 (H.B. 1927) ..................................................... 5
Acts 2021, 87th Leg., R.S., Ch. 203 (H.B. 918), Sec. 1, eff. September 1, 2021 .......... 5
Apr. 12, 1871, 12th Leg., R.S., ch. 34, § 1 ............................................................... 3
*Crime in the United States 2009*, Table 38: Arrests by Age (Sept. 2010) ................. 10
Don B. Kates, *Second Amendment*, in 4 *Encyclopedia of the American Constitution*
     1640 (Leonard W. Levy et al. eds., 1986) .......................................................... 9
*Gun Crime in the Age Group 18-20*, at 2 (June 1999) .............................................. 10
*The Laws of Texas 1822-1897*, at 927, 927 (Austin, Gammel Book Co. 1898) ........... 3

## State Statutes

ALASKA STAT. § 18.65.705 (2021) ........................................................................... 5
ARIZ. REV. STAT. ANN. § 13-3112 (2021) ............................................................... 5
ARK. CODE Ann. § 5-73-309(3) (2021) .................................................................... 5
COLO. REV. STAT. ANN. § 18-12-203(1) (2021) ..................................................... 6
CONN. GEN. STAT. ANN. § 29-28 (2021) ................................................................ 6
FLA. STAT. ANN. § 790.06(2) (2021) ....................................................................... 6
GA. CODE ANN. § 16-11-129(b) (2021) ................................................................... 6
HAW. REV. STAT. ANN. §134-2(d) (2021) ............................................................... 6
IDAHO CODE ANN. §18-3302(1) (2022) .................................................................. 6
IOWA CODE ANN. § 724.8 (2022) ........................................................................... 6
KAN. STAT. ANN. § 75-7c04 (2021) ......................................................................... 6
KY. REV. STAT. ANN. § 237.110(4) (2022) .............................................................. 6
LA. REV. STAT. ANN. § 1379.3 (2021) ..................................................................... 6
MASS. GEN. LAWS ANN. ch. 140 § 131 (2021) ...................................................... 6
MD. CODE, PUBLIC SAFETY § 5-133(d)(1) .............................................................. 6
MICH. COMP. LAWS ANN. § 28.425b(7) (2021) ...................................................... 6
MINN. STAT. ANN. § 624.714 (2021) ....................................................................... 6
MISS. CODE ANN. § 45-9-101(2) (2022) .................................................................. 6
N.C. GEN. STAT. ANN. § 14-415.12(a) (2021) ......................................................... 6
N.J. STAT. ANN. § 2C:58-4 (2021) ........................................................................... 6
N.M. STAT. ANN. § 29-19-4 (2021) .......................................................................... 6
N.Y. PENAL LAW § 400.00 (2021) ........................................................................... 6
NEB. REV. STAT. ANN. § 69-2433(1) (2021) ........................................................... 6
NEV. REV. STAT. ANN. § 202.3657 (2021) .............................................................. 6
OHIO REV. CODE ANN. § 2923.125(D) (2022) ........................................................ 6
OKLA. STAT. ANN. tit. 21 § 1290.9 (2021) .............................................................. 6
OR. REV. STAT. ANN. § 166.291 (2021) .................................................................. 6

PA. CONS. STAT. ANN. § 6109 (2022) ........................................................................ 6

R.I. GEN. LAWS § 11-47-11 (2021) ............................................................................. 6

S.C. CODE ANN. § 23-31-215 (2021) .......................................................................... 6

TENN. CODE ANN. § 39-17-1351 (2021) .................................................................... 6

UTAH CODE ANN. § 53-5-704 (2021) ......................................................................... 6

VA. CODE ANN. § 18.2-308(D) (2022) ....................................................................... 6

W. VA. CODE ANN. § 61-7-4 (2022) ........................................................................... 6

WASH. REV. CODE ANN. § 9.41.070 (2022) .............................................................. 6

WYO. STAT. ANN. § 6-8-104 (2021) .......................................................................... 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AIDAN ANDREWS, JORDYN BLAKEY, and FIREARMS POLICY COALITION, INC., *Plaintiffs*, | § § § § | |
| v. | § § | |
| STEVEN MCCRAW, in his official capacity as Director of the Texas Department of Public Safety, JOHN FORREST in his official capacity as County Attorney of Parker County, RICHARD E. GLASER, in his official capacity as Criminal District Attorney of Fannin County, and J. BRETT SMITH, in his official capacity as District Attorney of Grayson County, *Defendants*, | § § § § § § § § § § § § § | Civil Action No. 4:21-cv-1245 |

---

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Defendant Steven McCraw ("McCraw") files this Brief in Support of Motion For Summary Judgment. In support, McCraw offers the following for the Court's consideration:

### INTRODUCTION

The right to keep and bear arms is a fundamental bulwark of freedom, and our Constitution demands that federal and state governments respect this individual right. But the States' police powers allow them to establish reasonable, non-pretextual minimum ages for the exercise of constitutionally protected liberties. The Constitution permits States to limit certain constitutional rights over the age of 21.

***

Texas law restricts people under the age of 21 ("Under-21s") from publicly carrying a handgun, with several exceptions. Plaintiffs bring suit on behalf of 18-to-20-year-olds hoping to publicly carry a handgun. The Fifth Circuit has affirmed age-based restrictions on handguns. *NRA v. BATF*, 700 F.3d 185, 194 (5th Cir. 2012) (*BATF*); *NRA v. McCraw*, 719 F.3d 338 (5th Cir. 2012) (*McCraw I*). *McCraw I* rejected a facial challenge to the same statutory framework at issue in this case, and Plaintiffs acknowledge the Fifth Circuit's ruling in that case forecloses their facial challenge in this case. That statutory framework continues to reasonably fit the important government interest of curbing violence associated with young people. This case also brings an as-applied challenge, arguing Texas' age-based restrictions improperly burden young women. The *McCraw I* rationale likewise forecloses this claim, as do available data on violent crime rates among young women.

## I.   STATEMENT OF FACTS

### A. Statutory Framework

Texas Penal Code Section 46.02 sets out the general prohibition. It provides, in pertinent part:

> A person commits an offense if the person:
> (1) intentionally, knowingly, or recklessly carries on or about his or her person a handgun;
> (2) at the time of the offense:
>     (A) is younger than 21 years of age; [and] …
> (3) is not
>     (A) on the person's own premises or premises under the person's control; or
>     (B) inside of or directly en route to a motor vehicle or watercraft that is owned by the person or under the person's control.

TEX. PENAL CODE § 46.02(a).

This restriction does not apply to a person with a license to carry a handgun under Subchapter H of the Texas Government Code ("LTC"), *id.* at 46.15(b)(6)(A), whether the handgun is concealed or holstered. *Id.* at 46.15(b)(6)(B). Generally, a person must be 21 years old to obtain an LTC, although exceptions exist for military personnel, honorably-discharged veterans, and persons protected by a protective order under either the Texas Family Code or the Texas Code of Criminal Procedure. TEX. GOV'T CODE §§ 411.172(a)(2), (h), (i).

Plaintiffs' suit challenges Texas Penal Code Section 46.02 and 46.15(b)(6)(A), Texas Government Code Section 411.172(a)(2) and (g), and "all related laws, regulations, policies, practices, and customs" ("Challenged Provisions").

## B. Legislative History

### 1. *Before* McCraw I

Section 46.02(a) was codified in 1973. Act of May 24, 2073, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 963. Its relevant restriction, however, dates back to the nineteenth century. Act approved Apr. 12, 1871, 12th Leg., R.S., ch. 34, § 1, 1871 Tex. Gen. Laws 25, 25, reprinted in 6 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 927, 927 (Austin, Gammel Book Co. 1898) (making it generally unlawful for a person to "carry[] on or about his person, saddle, or in his saddle bags, any pistol …").

The relevant restrictions in Texas Government Code subsections 411.172(a) have existed since 1995, when the Texas Legislature enacted the concealed handgun licensing program. Act of May 16, 1995, 74th Leg. R.S. ch. 229, § 1, 1995 Tex. Gen. Laws 1998, 1999. The 74th Legislature considered and rejected a proposed

amendment that would have lowered subsection (a)(2)'s minimum age requirement to 18. Exh. A, p. 2. Several legislators opposed the amendment because they regarded Under-21s as insufficiently mature to carry concealed handguns. *See* Debate on Tex. S.B. 60 on the Floor of the House, 74th Leg. R.S. (May 1, 1995) (on file at Texas State Legislature House Media Office) (Tape 2 Side B) (Rep. Seidlits: "A moment ago you all defeated the 18 year old amendment because you thought 18 year olds weren't mature enough to handle a firearm."); *id.* (Tape 2 Side A) (Rep. Wilson: "We certainly feel that at least early out that we should keep the age of 21 so that there is some level of maturity attained hopefully by then."); *see also id.* (Rep. Wilson: "We found that looking at the 38 some odd other States that those that are best served are those that have the age at 21.").

While the 1995 legislation marked a loosening of handgun prohibitions in Texas, the concealed handgun permit was adopted against a backdrop of concern surrounding the danger firearms pose to young people. Exh. B., p. 16. At the time, the legislation made no allowance for 18-to-20-year-olds with military experience.

It was not until 2005 that the Legislature expanded the eligibility criteria for concealed LTCs by enacting subsection 411.172(g). This provision permitted 18-to-20-year-olds to obtain concealed handgun licenses if they were members or honorably discharged veterans of the armed forces or the national guard. Documents from the legislative history indicate that this decision was based on the "extensive training in handling weapons" that military personnel receive. Exhibit C, p. 1. Although opponents of this change noted "the lack of maturity that young adults under the age of 21 invariably possess," its supporters countered that "[m]embers of the armed

forces—even young members—are highly trained in the use of weapons." Exh. D, p. 2. This was the state of the law when challenged on Second Amendment grounds in *McCraw I*.

    *2. Since* McCraw I

    In 2015, Texas lifted some of its handgun regulations, passing "open carry," which, *inter alia*, allowed those with an LTC to publicly carry a holstered handgun in plain view. *See* Acts 2015, 84th Leg., R.S., Ch. 437 (H.B. 910), Sec. 17, eff. January 1, 2016.

    In 2021, Texas again loosened handgun restrictions. This time, Texas passed "constitutional carry," allowing unlicensed persons over the age of 21 (and not convicted of a variety of misdemeanors, such as assault) to publicly carry a handgun, either openly or concealed. *See* Acts 2021, 87th Leg., R.S., Ch. 203 (H.B. 1927), Sec. 22, eff. September 1, 2021. Additionally, Texas added a new category of 18-to-20-year-olds who can obtain an LTC: those under the protection of an active protective order under the Texas Family Code or Texas Code of Criminal Procedure, or active magistrate's order under the Texas Code of Criminal Procedure. *See* Acts 2021, 87th Leg., R.S., Ch. 203 (H.B. 918), Sec. 1, eff. September 1, 2021; TEX. GOV'T CODE § 411.172(i).

**C. Nationwide Context**

    Texas is one of at least thirty-seven states to impose age-based restrictions on carrying handguns. ALASKA STAT. § 18.65.705 (2021); ARIZ. REV. STAT. ANN. § 13-3112 (2021); ARK. CODE Ann. § 5-73-309(3) (2021); COLO. REV. STAT. ANN. § 18-12-203(1) (2021); CONN. GEN. STAT. ANN. § 29-28 (2021); FLA. STAT. ANN. §

790.06(2) (2021); GA. CODE ANN. § 16-11-129(b) (2021); HAW. REV. STAT. ANN. §134-2(d) (2021); IDAHO CODE ANN. §18-3302(1) (2022); IOWA CODE ANN. § 724.8 (2022); KAN. STAT. ANN. § 75-7c04 (2021); KY. REV. STAT. ANN. § 237.110(4) (2022); LA. REV. STAT. ANN. § 1379.3 (2021); MD. CODE, PUBLIC SAFETY § 5-133(d)(1) MASS. GEN. LAWS ANN. ch. 140 § 131 (2021); MICH. COMP. LAWS ANN. § 28.425b(7) (2021); MINN. STAT. ANN. § 624.714 (2021); MISS. CODE ANN. § 45-9-101(2) (2022); NEB. REV. STAT. ANN. § 69-2433(1) (2021); NEV. REV. STAT. ANN. § 202.3657 (2021); N.J. STAT. ANN. § 2C:58-4 (2021); N.M. STAT. ANN. § 29-19-4 (2021); N.Y. PENAL LAW § 400.00 (2021); N.C. GEN. STAT. ANN. § 14-415.12(a) (2021); OHIO REV. CODE ANN. § 2923.125(D) (2022); OKLA. STAT. ANN. tit. 21 § 1290.9 (2021); OR. REV. STAT. ANN. § 166.291 (2021); PA. CONS. STAT. ANN. § 6109 (2022); R.I. GEN. LAWS § 11-47-11 (2021); S.C. CODE ANN. § 23-31-215 (2021); TENN. CODE ANN. § 39-17-1351 (2021); UTAH CODE ANN. § 53-5-704 (2021); VA. CODE ANN. § 18.2-308(D) (2022); WASH. REV. CODE ANN. § 9.41.070 (2022); W. VA. CODE ANN. § 61-7-4 (2022); WYO. STAT. ANN. § 6-8-104 (2021).

## II.   ARGUMENT AND AUTHORITY

### A. Plaintiffs' Facial Challenge Fails

*1. The Second Amendment,* Heller, *and* McDonald

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." *Heller* held the Second Amendment enshrined a pre-Constitutional individual right to keep and bear arms. *Dist. of Columbia v. Heller*, 554 U.S. 570, 592, 595 (2008). *McDonald* recognized "the right to keep and bear arms [is] among those

fundamental rights necessary to our system of ordered liberty," and is incorporated against the States via the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

The right to keep and bear arms, though necessary and fundamental, is not unbounded. The Supreme Court made clear in *Heller*:

> [N]othing in our opinion should be taken to cast doubt on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. 626-27. The Court noted these "presumptively lawful regulatory measures" were merely "examples," that were illustrative, "not exhaustive." *Id*. at 627 n. 26. However, the Court stopped short of establishing an analytical framework by which to measure future challenged firearms regulations.

   *2. The* BATF *Test*

The Fifth Circuit has followed several other federal courts of appeal in adopting a two-step test by which to analyze Second Amendment challenges. *BATF*, 700 F.3d at 194 (citing *U.S. v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011) (*Heller II*); *Ezell v. City of Chicago*, 651 F.3d 684, 701-04 (7th Cir. 2011); *U.S. v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *U.S. v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010); *U.S. v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)).

The first step of the inquiry is whether the conduct at issue falls within the scope of the Second Amendment. *Id*. This step requires evaluating whether the challenged provision "harmonizes with the historical traditions associated with the

Second Amendment guarantee." *Id.* Longstanding, presumptively lawful regulatory measures need not be on *Heller's* illustrative list, and need not "boast a precise founding-era analogue." *Id.* at 196 (citing *Heller II*, 670 F.3d at 1253-54, and noting *Heller* considered firearm possession bans on felons and the mentally ill that originated in the mid-20th century). If the challenged provision merely affects conduct falling outside the scope of the Second Amendment, the provision is constitutional. *Id.* at 195. If the challenged provision is within the Second Amendment's scope, then courts should proceed to the second step. *Id.*

The second step of the inquiry requires applying the appropriate level of means-end scrutiny. *Id.* The level of scrutiny applied depends on the nature of the regulated conduct. *Id.* Regulations burdening a right at the core of the Second Amendment require strict scrutiny. *Id.* But less severe regulations trigger intermediate scrutiny, which requires a reasonable fit between the challenged provision and an important government interest. *Id.*

### 3. The BATF *Test Has Twice Upheld Under-21 Firearms Regulation*

#### a. *BATF* upheld limitations on the sale of firearms to Under-21s

*BATF* addressed the constitutionality of a federal law prohibiting federally licensed firearms dealers from selling handguns to Under-21s. *Id.* at 188. In evaluating whether the challenged law burdened conduct protected by the Second Amendment, the Court reviewed the history of age-based restrictions on firearms access and reached several conclusions bearing on the instant cause. *Id.* at 200.

First, the right to keep and bear arms is not unlimited, and a tradition of disarming and restricting firearms sales—particularly for public safety reasons—pre-

dates the Revolution. *Id*. Moreover, "the Founders would [likely] have supported limiting or banning 'the ownership of firearms by minors...'" *Id*. at 201 (quoting Don B. Kates, *Second Amendment*, in 4 *Encyclopedia of the American Constitution* 1640 (Leonard W. Levy et al. eds., 1986) and citing *U.S. v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001)). "Minor" or "infant" were historically understood to describe persons under the age of 21. *Id*. Indeed, by the end of the 19th century, 19 (of the then 45) states, and the District of Columbia, had laws restricting the purchase or use of firearms for Under-21s. *Id*. at 202. By 1923, the number of states with such laws had risen to 22. *Id*. Commentators dating at least as far back as the 19th century recognized the validity of imposing age restrictions on arms sales. *Id*. at 202-03. Based on these findings, the *BAFT* held the age-based restriction on the sale of handguns comported with a longstanding tradition of age- and safety-based restrictions on the ability to access firearms. *Id*. at 203.

BATF further held that the challenged age-based restriction on firearms did not burden conduct protected by the Second Amendment. *Id*. However, out of an abundance of caution, the Court proceeded to the second step of its analysis. That analysis also yielded several conclusions relevant here.

First, the Fifth Circuit applied intermediate scrutiny to the age-based restriction at issue in *BATF*. *Id*. at 204-07. The Second Amendment permits "categorical regulation of gun possession by classes of persons." *Id*. at 205. Age-based restrictions on firearms access are not salient outliers in the historical landscape of gun control. *Id*. A prohibition on handgun access to 18-to-20-year-olds has a "narrow ambit," unlike the *Heller* ban that disarmed an entire community. *Id*. "Moreover, as

with felons and the mentally ill, categorically restricting the presumptive Second Amendment rights of 18-to-20-year-olds does not violate the central concern of the Second Amendment." *Id*. at 206. Such laws do not severely burden the rights of 18-to-21-year-olds, and are "presumptively lawful." *Id*. (quoting *Heller*, 554 U.S. at 626-27 & n. 26). Intermediate scrutiny is appropriate because the age-based restriction is of temporary effect: "[a]ny 18-to-20-year-old subject to the ban will soon grow up and out of its reach." *Id*. at 207.

In applying intermediate scrutiny, the *BAFT* surveyed evidence of the important government interest of curtailing violent crime associated with firearms in the hands of Under-21s. *Id*. at 208-11. A 1999 report by the U.S. Departments of Treasury and Justice found that in 1997, 18-, 19-, and 20-year-olds ranked first, second, and third in the number of gun homicides committed. *Id*. at 209 (citing U.S. Dep't of the Treasury and U.S. Dep't of Justice, *Gun Crime in the Age Group 18-20*, at 2 (June 1999)). Similarly, a 2009 FBI Uniform Crime Report showed the 19-, 18-, and 20-year-olds accounted for first, second, and third-highest percentages of arrests. *Id*. at 210 (citing U.S. Dept. of Justice & Fed. Bureau of Investigation, *Crime in the United States 2009*, Table 38: Arrests by Age (Sept. 2010), http://www2.fbi.gov/ucr/cius2009/data/table_28.html ("2009 CIUS Report")).

*BAFT* found that the age-based handgun sales restriction reasonably fit with the important government interest of reducing gun violence associated with firearms access by Under-21s. *Id*. at 208. In so doing, the Court rejected the plaintiffs' argument that the government's failure to regulate all handgun sales to Under-21s undermined the reasonableness of the fit: "We decline Appellants' invitation to strike

down these laws, under intermediate scrutiny, on the ground that they do not completely prevent young adults from accessing handguns and committing violent crimes." *Id*. at 211.

b. *McCraw I* upheld Texas' prohibition of publicly-carried firearms by Under-21s

*McCraw I* addressed the constitutionality of Texas' age-based restriction on publicly carrying handguns—the Challenged Provisions in this case, as they then existed. 719 F.3d 338, 342. In applying the first step of the *BATF* test, the Fifth Circuit held it was bound by *BATF*'s holding: restricting Under-21s' access to handguns to curb violence arising from immaturity does not burden rights protected by the Second Amendment. *Id*. at 347. Like *BAFT*, *McCraw I* only proceeded to the second step out of an abundance of caution. *Id*.

In applying the second step of the *BATF* test, *McCraw I* reasoned that Texas' age-based restrictions on publicly carrying handguns do not burden the core of the Second Amendment, and even if they do, are not severe because they are temporary and only limit carrying outside one's home or vehicle. *Id*. at 348. Intermediate scrutiny is therefore appropriate. *Id*.

Texas' age-based restrictions on publicly carrying handguns advances, and in substantially related to, the same important government interest upheld in *BATF*: advancing public safety by curbing violent crime. *Id*. (citing *BATF*, 700 F.3d at 209). Relying on the discussion in *BATF* and the trial court record, which included the relevant legislative history, *McCraw I* concluded:

> Texas determined that a particular group was generally immature and that allowing immature persons to carry handguns in public leads to gun violence. Therefore, it restricted the ability of this particular group

to carry handguns outside their vehicles in public. This means is substantially related to the Texas's stated goal of maintaining public safety, and it still allows 18-to-20-year-olds to have handguns in their cars and homes and to apply for concealed handgun licenses as soon as they turn 21. The Texas scheme thus survives intermediate scrutiny, and we affirm the district court's conclusion that it does not violate the Second Amendment.

*Id.* at 349

### 4. The BATF *Test Shows the Challenged Provisions Are Constitutional*

#### a. Step 1: The challenged provisions do not burden conduct protected by the Second Amendment

The *BATF* and *McCraw I* holdings, that restrictions on the use of handguns by 18-to-21-year-olds, apply with equal force in this case. Indeed, Plaintiffs acknowledge that *McCraw I* forecloses their facial challenge. Dkt. 1, ¶ 19. The restrictions only touch carrying handguns outside the home or vehicle, for a limited period, and with exceptions for current or past, honorable military service, and for those with a particularized need for protection evidenced by a protective order. Because the Challenged Provisions do not burden conduct protected by the Second Amendment, Plaintiffs' facial challenge fails.

#### b. Step 2: The challenged provisions require only intermediate scrutiny, which they pass

Even if the Court is inclined, like *BATF* and *McCraw I*, to proceed in the analysis out of an abundance of caution, Plaintiffs' facial challenge fails. Texas' temporary restrictions affecting a discrete category of people from carrying a particular kind of firearm outside the home or vehicle—absent the exceptions described—"[u]nquestionably...trigger nothing more than 'intermediate' scrutiny." *BATF*, 700 F.3d at 205.

The findings of *McCraw I*—that the discussion in *BATF* and the record in *McCraw I* itself emphasize the danger posed by Under-21s—remains salient today. This is particularly true because current statistics documenting Texas crime rates show that 18-to-20-year-olds continued to constitute some 17.5% of all non-juvenile arrestees for murder and manslaughter in 2019, and 18.4% in 2020. Exh. G; *see also* Exh. E, McCraw 000215-218; Exh. F, McCraw 000293-300. The "narrow ambit" of the Challenged Provisions is therefore a reasonable fit for the important government interest in curbing violence associated the immaturity of young people. *McCraw I*, 719 F.3d at 349 (quoting *BATF*, 700 F.3d at 205.

The Challenged provisions survived intermediate scrutiny in 2013, and since then have considerably lightened any burden on the right to keep and bear arms. Since 2013, Texas passed open carry, followed by constitutional carry. Moreover, Texas has increased 18-to-20-year-olds' access to LTCs by creating an exception to the Under-21 restriction for those under the protection of protective orders. If the Challenged Provisions passed constitutional muster without those looser restrictions, then *a fortiori* the Challenged Provisions pass constitutional muster now.

The Challenged Provisions therefore continue to survive intermediate scrutiny, and Plaintiffs' facial challenge fails.

### B. Plaintiffs' As-Applied Challenge Fails

The Challenged Provisions are age-based restrictions. Plaintiffs' contention that these age-based restrictions lack legitimate justification is unsupported by the law, and by applicable data.

Plaintiffs point to nationwide statistics and suggest that Under-21 women are

exceedingly unlikely to commit a violent crime. From this premise, Plaintiffs argue that the Challenged Provisions do not survive "heightened" scrutiny as applied because—Plaintiffs argue—Defendants cannot present evidence of a compelling or substantial interest in restricting young women's public carrying of handguns. This argument fails for at least four reasons. First, Plaintiffs as-applied arguments were already rejected when cast as overbreadth arguments in *McCraw I*. Second, the as-applied claim is indistinguishable from a disparate impact claim, which is not cognizable either under the Fourteenth Amendment, or by way of a Section 1983 action. Third, Plaintiffs suggest the Court apply the wrong level of scrutiny. Fourth, the Challenged Provisions survive Plaintiffs' as-applied challenge under intermediate scrutiny.

### 1. The As-Applied Claim Fails as an Overbreadth Claim

Plaintiffs' as-applied challenge disguises an argument rejected by *McCraw I*: that the Challenged Provisions are overbroad because they assume all 18-to-20-year-olds are too immature to carry a handgun in public. *McCraw I*, 719 F.3d at 349. The Fifth Circuit gave this argument no credence, noting the provisions already had a "narrow ambit" limited to a "discrete category" of persons as allowed under both *Heller* and *BATF*. *Id.* (citing *BATF*, 700 F.3d at 205; *see also Heller*, 626, 627, n. 26). Disguising this discarded overbreadth argument as an as-applied challenge does not overcome the reasoning in *McCraw I*.

### 2. The As-Applied Claim Fails as a Disparate Impact Claim

Although the Complaint assiduously avoids using the term "disparate impact," Plaintiffs cannot disguise the fact that their as-applied claim is based on allegations

that the Challenged Provisions disproportionately burden women. Dkt. 1, ¶¶ 87-91. Such a claim requires disguising, because disparate impact claims are not actionable under the Fourteenth Amendment, or under Section 1983 as a stand-alone procedural provision. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 136 (1996) (J. Thomas, dissenting) ("Our frequent pronouncements that the Fourteenth Amendment is not violated by disparate impact have spanned challenges to statutes alleged to affect disproportionately members of one race … members of one sex … and poor persons seeking to exercise protected rights.") (citing *Harris v. McRae*, 448 U.S. 297, 324, n. 26 (1980); *Lewis v. Casey*, 518 U.S. 343, 375 (1996) (J. Thomas, concurring); and *Maher v. Roe*, 432 U.S. 464, 470-71 (1977)); *see also Gaines v. City of Vicksburg*, 68 F.3d 469 (5th Cir. 1995) ("We hold that Gaines's argument fails because a disparate impact case cannot be pursued under § 1983."). "To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons." *Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966).

The Supreme Court was explicit in *Washington v. Davis*, holding:

> [a] rule that a statute designed to serve neutral ends is nevertheless invalid, absent compelling justification, if in practice it benefits or burdens one race more than another would be far reaching and would raise serious questions about, and perhaps invalidate, a whole range of tax, welfare, public service, regulatory, and licensing statutes that may be more burdensome to the poor and to the average black than to the more affluent white.

426 U.S. 299, 239 (1976).

*Personnel Adm'r of Massachusetts v. Feeney* held the reasoning in *Davis* applied with equal force to gender-based disparate impact claims, and required plaintiffs to show: (1) the challenged statute was not gender-neutral, and (2) any

adverse effect reflects invidious gender-based discrimination. 442 U.S. 256, 274 (1979). This second element requires a showing not merely of disparate impact, but "purposeful discrimination." *Id*.

Plaintiffs can satisfy neither of these required showings. The Challenged Provisions make no mention of gender, and so are facially neutral. Any adverse effects resulting from the Challenged Provisions are explained by their purpose, *id*. at 275, which—as described—is curbing violence associated with age, not with gender. Courts may not ignore legitimate, noninvidious statutory purposes, notwithstanding any alleged disparate impact. *Id*. Thus, Plaintiffs' disguised disparate impact claim fails.

### 3. Intermediate Scrutiny Applies to Plaintiffs' As-Applied Challenge

The Court should apply intermediate, rather than strict, scrutiny to the Challenged Provisions. *BATF* held that the age-based firearm restriction in that case "[u]nquestionably…trigger[ed] no more than 'intermediate' scrutiny." *BATF*, 700 F.3d at 205. *McCraw I* likewise applied intermediate scrutiny to the Challenged Provisions as they then existed, holding the *BATF* rationale for applying intermediate scrutiny applied with equal force to the age-based restrictions at issue in *McCraw I*. *McCraw I*, 719 F.3d at 348. Plaintiffs concede *McCraw I* forecloses their facial challenge in this lawsuit, effectively admitting this Court must apply intermediate scrutiny to the facial challenge in the instant cause. Dkt. 1, ¶ 19.

Nevertheless, Plaintiffs continue to suggest the Court might apply strict scrutiny to their as-applied claim. Dkt. 1, ¶ 91 ("Without any legitimate justification, much less one of a 'compelling' or 'substantial' nature as required to survive

heightened scrutiny…Texas' 18-to-20-Year-Old Carry Ban is unconstitutional."). But nothing in Plaintiffs' as-applied challenge meaningfully distinguishes it from their facial claim when evaluated through the lens of Fifth Circuit criteria for determining the appropriate scrutiny for age-based restrictions on firearms.

*McCraw I* identified three bases on which it, and *BATF*, applied intermediate scrutiny to age-based handgun restrictions: (1) the restrictions affected only handguns; (2) the restrictions did not prevent possession or use of firearms in defense of hearth and home; and (3) the age-based restrictions had "only a temporary effect that ends as soon as the person turns 21." *McCraw I*, 719 F.3d at 348; *see also BATF*, 700 F.3d at 206-07. Those same factors characterize the Challenged Provisions in the instant cause, and Plaintiffs offer no argument to the contrary. The Court should therefore apply intermediate scrutiny.

### 4. *The Challenged Provisions Survive Intermediate Scrutiny*

Defendants have supplied ample evidence of the Challenged Provisions' reasonable fit with the important government interest of curbing violence associated with youthful immaturity. That evidence applies with equal force to Plaintiffs' as-applied claims.

Plaintiffs' hopes of a colorable as-applied challenge hinge upon a numbers game. By offering selected statistics, they hope to convince the Court that women aged 18 to 20 present an insufficient danger of violence to justify their inclusion under the Challenged Provisions.

### a. Plaintiffs' first numbers game: very few people commit any crimes

Plaintiffs argue, for instance, that "[a]ll but a miniscule portion of 18-to-20-

year-old women pose no threat to public safety," citing statistics suggesting 0.13% of women nationwide were arrested for violent crime in 2019. Dkt. 1, ¶ 89. But this argument belies the extraordinarily small percentage of people who commit crime of any kind. For example, in 2020 in Texas, there were 530,711 reported arrests; this number constitutes just 1.8% of Texas' total population at the time (29,145,505). Exh. E, McCraw 000287-288. For violent crimes in Texas in 2020 (murder, manslaughter, rape, robbery, aggravated assault) there were 32,701 arrests—meaning that just 0.11% of all Texans were arrested for violent crimes in 2020. *Id*.

These numbers largely hold true in 2019. In 2019, there were 698,834 reported arrests out of a population of 28,995,881, meaning 2.4% of all Texans were arrested for any crime in 2019 (assuming no one was arrested twice). Exh. F, p. 212. Texas had 36,545 arrests for violent crimes in 2019, meaning only 0.12% of all Texans were arrested for violent crimes in 2019. These statistics show women nationwide are arrested, for any crime or for violent crime, at approximately the same rate that Texans generally are arrested for such offenses. These calculations demonstrate the disingenuousness of Plaintiffs' proffered statistics.

  b. <u>Plaintiffs' second numbers game: comparing apples to oranges</u>

Plaintiffs also attempt to show the purported non-violence of women aged 18 to 21 by comparing their arrest rates to those of men. To be sure, women commit violent crimes, and crimes of any sort, and a lower rate than men. But the purpose of the Challenged Provisions is to limit the danger posed by all young people compared to their older counterparts. The relevant question is therefore not whether young women commit any or all crime, or large portions of crime compared to men, but

simply whether young women commit enough violent crime to give rise to an important government interest. *See McCraw I*, 719 F.3d at 349 ("Texas determined that a particular group was generally immature and that allowing immature persons to carry handguns in public leads to gun violence," and holding that such determination—without more—supported an important government interest). Thus, to evaluate statistical contributions to violent crime for purposes of Plaintiffs' gender-based as-applied challenge, the only reasonable analysis requires evaluating whether young women contribute to violent crime in a statistically significant way compared to older women.

In 2019, 18-to-20-year-old women accounted for 9% of all women arrested for violent crimes. Exh. C, pp. 217-18. In 2020, that number rose to 10%. Exh. D, pp. 297, 299. By comparison, in 2019, 18-to-20-year-old men accounted for 11.6% of all men arrested for violent crimes. Exh. C, pp. 215-16. In 2020, that number dropped to 11%. Exh. D, pp. 293, 295. Evaluated this way, we see 18-to-20-year-old women are roughly as likely to be arrested for violent crimes compared to women of other ages as 18-to-20-year-old men are compared to men of other ages. These figures are well within the realm *BATF* and *McCraw I* considered sufficient to survive intermediate scrutiny. *See BATF*, 700 F.3d at 209-10 (relying on federal statistics showing, e.g.: 14.8 percent of guns traced to crimes recovered were from 18-to-20-year-olds; 15% of 18-to-20-year-old offenders used a firearm; 18-to-20-year-olds accounted for 19% of all murder and non-negligent manslaughter arrests, 14% of all arrests for forcible rape, and 12% of all aggravated assaults); *accord McCraw I*, 719 F.3d at 348 (citing the record, "federal statistics," and *BATF*, 719 F.3d at 208-210).

Plaintiffs' attempted numbers game thus fails to undermine Defendant's evidence demonstrating the Challenged Provisions are a reasonable fit to an important governmental interest. As a result, Plaintiffs' as-applied challenge fails.

## CONCLUSION

For the foregoing reasons, the Defendant Steven McCraw respectfully requests that the Court grant summary judgment and dismiss all of Plaintiffs' claims with prejudice.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Texas Bar No. 24060998
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
Ryan.Kercher@oag.texas.gov

***Counsel for Defendant***
***Steven McCraw***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2022, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
