IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| AIDAN ANDREWS, JORDYN BLAKEY, and FIREARMS POLICY COALITION, INC., <br> *Plaintiffs*, <br><br> v. <br><br> STEVEN MCCRAW, *et al.*, <br> *Defendants*, | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 4:21-cv-1245 |

**DEFENDANT STEVEN MCCRAW'S BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE MARK T. PITTMAN, U.S. DISTRICT JUDGE:

Defendant Steven McCraw, in his official capacity as Director of the Texas Department of Public Safety ("McCraw") files his Response in Opposition to Plaintiffs' Motion for Summary Judgment. (Dkt. 57).

## INTRODUCTION

Plaintiffs challenge Texas' age-based regulations on publicly carrying handguns (the "Challenged Provisions"), alleging Second Amendment violations. When the Fifth Circuit previously considered such challenges to these laws, it compared the rate of violent crime committed by 18-to-20-year-olds to the rate of violent crime committed by their older counterparts. Plaintiffs' claims—that the Challenged Provisions are unjustified as to 18-to-20-year-old women—should therefore evaluate whether 18-to-20-year-old women commit violent crime compared to older women at a rate comparable to the rate at which 18-to-20-year-old men commit violent crime compared to older men—or, indeed, to the rate at which 18-to-20-year-olds of any gender commit violent crimes compared to the older population. Plaintiffs' claims cannot survive this analysis, and so they propose that this Court fabricate another by adopting an Equal Protection and/or disparate impact analysis. The Court should decline Plaintiffs' proposition, grant McCraw's Motion for Summary Judgment, and deny Plaintiffs' Motion for Summary Judgment.

## ARGUMENT

### A. Plaintiffs' Facial Claim Fails

The Parties agree the Fifth Circuit applies a two-step Second Amendment analysis. The first step determines whether the challenged provision falls within the scope of the Second Amendment by evaluating whether the provision harmonizes with longstanding, presumptively lawful regulatory measures ("First Step"). *Nat'l Rifle Ass'n of America, Inc. v. Bur. of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 194-95 (5th Cir. 2012) ("*BATF*"); *Nat'l Rifle Ass'n of America, Inc. v. McCraw*, 719 F.3d 338, 346-47 (5th Cir. 2013) ("*McCraw I*").[1] The second step requires applying the appropriate level of means-end scrutiny ("Second Step"). *BATF*, 700 F.3d at 194-95; *McCraw I*, 719 F.3d 346-47.

*McCraw I* and *BATF* bar Plaintiffs' facial challenge because they are binding as to both the First Step and Second Step. *McCraw I*, 719 F.3d at 347-47; *BATF*, 700 F.3d at 194-95. Plaintiffs concede as much regarding the Second Step, but urge the Court to reject these Fifth Circuit opinions' First Step holdings as dicta. They are not dicta.

> A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it. A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law.

*Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Ci. 2004). Because the *McCraw I* and *BATF* First Step analyses are not peripheral, and constitute explication of the governing rules of law, those cases are binding authority as to the First Step analysis. *See McCraw I*, 719 F.3d at 348 (in considering the prior panel's First Step analysis in *BATF*, the Court did not call it dicta, but instead adopted it wholesale).

Plaintiff' own case, *U.S. v. Segura*, held a prior panel's opinion to be dicta only where the previous panel "did not meaningfully consider" the issue discussed. 747 F.3d 323, 329 (5th Cir. 2014).

---

[1] Plaintiffs refer to *BATF* as "*NRA I*," and to *McCraw I* as "*McCraw*."

In contrast to the passing singular footnote in *Segura*, *McCraw I* and *BATF* meaningfully considered both the First Step and the Second Step, and expressly held both preclude Plaintiffs' facial challenge. *McCraw I*, 700 F.3d at 199-205; *BATF*, 719 F.3d at 348. Plaintiffs cite no cases holding that where two Fifth Circuit panels rule that both parts of a two-part test support dismissal, discussion of the second part of the test obviates discussion of the first.

Even if *McCraw I* and *BATF* are not binding on the First Step, McCraw has the more persuasive authority: *McCraw I* and *BATF*, are two separate, unanimous Fifth Circuit panel analyzing the same statutory framework as the one at issue here. Both opinions expressly foreclose Plaintiffs' claims under the First Step analysis. In contrast, Plaintiffs have only a vacated opinion from the Fourth Circuit, and the dissent to a denial of *en banc* rehearing. *See* Dkt. 58, p. 11 (citing *Nat'l Rifle Assoc. of America, Inc. v. Bur. of Alcohol, Tobacco, Firearms, and Explosives*, 714 F.3d 334 (5th Cir. 2013) (Jones, J., dissenting) (Plaintiffs cite as "*NRA II*") and *Hirschfeld v. Bur. of Alcohol, Tobacco, Firearms, and Explosives*, 5 F.4th 407 (4th Cir. 2021) ("*Hirschfeld I*") vacated by *Hirschfeld v. Bur. of Alcohol, Firearms, Tobacco and Explosives*, 14 F.4th 322 (4th Cir. 2021) ("*Hirschfeld II*")).[2]

### B.  Plaintiffs' Count I Claims Do Not Survive Intermediate Scrutiny

In all events, despite their complaints about the Fifth Circuit improperly adopting a scrutiny approach to Second Amendment issues, Plaintiffs concede that *McCraw I* and *BATF* are binding as to the Second Step analysis: intermediate scrutiny applies. Intermediate scrutiny requires the Challenged Provisions be reasonably adapted to achieve an important government interest. *McCraw I*, 719 F.3d at 348.

---

[2] Plaintiffs filed a Response in Opposition to Summary Judgment and accompanying brief and appendix (Dkt. 54-56) as well as a Motion for Summary Judgment with accompanying brief and appendix (Dkt. 57-58). While the Plaintiffs' Response and Motion contain mild alterations, their two briefs, and two appendices, are identical. When referencing Plaintiffs' arguments, this brief cites Plaintiffs brief in support of their Motion (Dkt. 58); however, McCraw's refutation of Plaintiffs' arguments applies equally to Plaintiffs' Response.

Under *McCraw I* and *BAFT*, the Challenged Provisions survive intermediate scrutiny. Plaintiffs argue that the Challenged Provisions should not pass intermediate scrutiny, because those provisions do not utilize the least restrictive means. Dkt. 58, p. 15. But Texas is not required to adopt the least restrictive means in order to pass intermediate scrutiny. *McCraw I*, 719 F.3d at 349. Moreover, the Fifth Circuit has already characterized the Challenged Provisions as having "substantial tailoring." *Id.*

As discussed at length in McCraw's opening brief, statistics show the Challenged Provisions are reasonably adapted to achieve an important government interest. Dkt. 46, pp. 17-20. Despite conceding that their facial challenge is foreclosed by *McCraw I* and *BAFT*, Plaintiffs nevertheless argue that 21-24-year-olds actually commit more aggravated assaults than 18-to-21-year-olds. Dkt. 58, p. 13. But assault is only aggravated in Texas if it (1) causes serious bodily injury to another, or (2) includes the *use or exhibition of a deadly weapon*. TEX. PEN CODE ANN. § 22.02(a) (West 2022) (emphasis added). Thus, rather than undercutting justification of the Challenged Provisions, Plaintiffs' argument that elevated aggravated assault rates among slightly older individuals just as likely proves the Challenged Provisions' efficacy—by depriving hotheaded young people of easy and legal access to handguns, the Challenged Provisions help prevent simple assault from evolving into something altogether more dangerous. This also defeats Plaintiffs' charge that "there is no evidence that [the Challenged Provisions are] reasonably connected to the problem" of 18-to-20-year old crime. Dkt. 58., p. 14.

### C. Plaintiffs' As-Applied Claims Are Actually Facial Claims

Facial claims challenge every possible application of a statute, whereas as-applied claims challenge a statute only in its application to the specific plaintiff(s) bringing the challenge. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). As noted above, Plaintiffs concede their facial challenge fails. Dkt. 58, p. 8. To create yet another bite at the apple, Plaintiffs purport to bring theoretically novel as-applied challenges. Yet these challenges are so sweepingly broad that they simply cannot constitute as-applied challenges, whatever Plaintiffs may call them.

> The label is not what matters. The important point is that plaintiffs' claim and the relief that would follow—an injunction barring the secretary of state "from making referendum petitions available to the public," … reach beyond the particular circumstances of these plaintiffs. They must therefore satisfy our standards for a facial challenge to the extent of that reach.

*Reed*, 561 U.S. at 194 (citing *United States v. Stevens*, 559 U.S. 460, 472-73 (2010)); *see also Bucklew v. Precythe*, 139 S.Ct. 1112, 1128 (2019). Because the relief sought by Plaintiffs' putative as-applied claims extends beyond the Plaintiffs in this case, Plaintiffs must satisfy the standards for a facial challenge to the extent of that reach.

Plaintiffs bring a Count I claim labeled an "as-applied" claim, but it purportedly extends to all of the Plaintiffs, and to each and every similarly-situated member of Plaintiff Firearms Policy Coalition, Inc. Dkt. 1, ¶ 78; Prayer for Relief (a). This is functionally indistinguishable from a facial challenge. Plaintiffs appear to agree, and do not address this claim separately from their facial claim. For clarity, the Court should grant McCraw's summary judgment motion as to this claim on the same basis as it should grant summary judgment dismissing Plaintiffs' facial challenge.

Plaintiffs' other purported as-applied claim—the only one their briefing defends—is likewise a facial challenge because it extends beyond the particular circumstances of these Plaintiffs. Dkt. 1, ¶ 86, Prayer for Relief (a). Plaintiffs' putative as-applied claim concerning young Texas women must therefore pass the rigors of facial analysis "to the extent of that reach." *Reed*, 561 U.S. at 194. The Challenged Provisions have already passed the Fifth Circuit's facial analysis, twice, in *McCraw I* and *BAFT*.

Plaintiffs' characterization of their claim does not alter the constitutional analysis. Plaintiffs argue that calling their challenge on behalf of young women "as applied" changes the constitutional analysis from comparing 18-to-20-year-olds against their older counterparts to suddenly comparing men against women. Dkt. 58, p. 20 (citing *Craig*, 429 U.S. at 201). But the Supreme Court has rejected precisely this sort of ploy. *Bucklew*, 139 S.Ct. at 1128 (refusing to hold that labeling a claim "facial" or

"as applied" changes the meaning of the Constitution). Plaintiffs therefore cannot insist upon a gender-against-gender analysis not required by the Second Amendment, the Challenged Provisions, *McCraw I*, or *BAFT*. To do so would convert Plaintiffs' claim into a disparate impact claim. Plaintiffs expressly disclaim any disparate impact claims, (Dkt. 58, pp. 19-20) and as explained below, any such claim fails as a matter of law.

**D.  Plaintiffs' Count II Claim Fails**

Plaintiffs' attempt to graft an Equal Protection claim onto the Second Amendment by way of a so-called as-applied claim fails. Plaintiffs' disparate impact claim is foreclosed by Supreme Court authority; Plaintiffs rely on two cases that cannot help them; and statistics show the Challenged Provisions survive intermediate scrutiny even when evaluated only as to 18-20-year-old women.

   1. *Plaintiffs' "As-Applied" Claim Regarding Women Is a Disparate Impact Claim Foreclosed by Supreme Court Precedent*

Plaintiffs cannot use semantics to cloak a disparate impact claim in the trappings of a Second Amendment challenge. Plaintiffs argue they have not brought a disparate impact claim—or an Equal Protection claim of any sort—because their argument arises not from an unequal burden imposed on men versus women by the Challenged Provisions, but from a supposed unequal justification for the burden on women compared to men. Dkt. 58, p. 19. This is a distinction without a difference. Plaintiffs' "unjustified" impact claim is that fewer women commit violent crimes, and the facially neutral Challenged Provisions therefore unjustifiably impact more non-violent women than they do non-violent men. That's a disparate impact claim, and it requires a showing of discriminatory intent for the reasons stated in McCraw's opening brief. Dkt. 46, pp. 14-16.

Plaintiffs attempt to sweep away case law foreclosing their disparate impact claim by bizarrely claiming such case law pertains only to Equal Protection claims—yet elsewhere, Plaintiffs expressly ask the Court to adopt the Equal Protection analysis in *Craig v. Boren*. 429 U.S. 190 (1976); *see* Dkt. 58, pp. 13, 20, 21. Plaintiffs' reliance on *Lewis v. Casey* is equally bizarre, because that case held, "absent

6

proof of discriminatory purpose, a law or official act does not violate the Constitution '*solely* because it has a ... disproportionate impact.'" 518 U.S. 343, 375 (1996) (quoting *Washington v. Davis*, 426 U.S. 229, 239 (1976) (emphasis original)). *Lewis* continues, saying it is a "'settled rule that the Fourteenth Amendment guarantees equal laws, not equal results.'" *Id.* (quoting *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 273 (1979)). Plaintiffs cannot simply sidestep this authority by disclaiming Equal Protection or Section 1983 claims, because they cannot cite a provision under the law that would entitle them to recover under their disparate impact claim. Plaintiffs have no authority showing that the Second Amendment requires greater equality than the Equal Protection Clause of the Fourteenth Amendment

### 2. *Neither* Craig *Nor* Hirschfeld I *Saves Plaintiffs' Claim*

#### a. Craig

Plaintiffs misunderstand and misapply *Craig*. 429 U.S. 190 (1976). *Craig* undertakes an Equal Protection analysis of facially gender-discriminatory statutes limiting the sale of "non-intoxicating" 3.2% alcoholic beer to all men under the age of 21, but only to women under the age of 18. *Id.* at 192. Plaintiffs ask this Court to compare men to women like *Craig*, even though (1) the Challenged Provisions do not facially discriminate by gender, and (2) Plaintiffs disclaim an Equal Protection claim. Plaintiffs also misconstrue *Craig* regarding the use of statistical analysis to meet intermediate scrutiny.

Plaintiffs' assertion that *Craig* "refused to subdivide the population to find a comparison that might justify the legislation" is absurd. Dkt. 58, p. 21. *Craig* <u>necessarily</u> subdivided the population because the statute at issue was *facially gender discriminatory*. Plaintiffs quote *Craig*'s language about 2% serving as an "unduly tenuous" statistical relationship to show that men are more likely to drink and drive, but fail to mention that this language analyzed a facially gender discriminatory statute where data showed 2% of men drinking and driving compared to 1.8% of women drinking and driving. *Id.*, p. 13 (citing *Craig*, 429 U.S. at 201-02); *cf. Craig*, 429 U.S. at 192.

*Craig* does not stand for the proposition that no law may restrain a group where some uncontemplated subgroup is particularly unlikely to run afoul of the government's important interest. Nor could it. To read *Craig*'s Equal Protection analysis so broadly would make Swiss cheese out of every criminal statute by requiring loopholes for any number of subdivisible demographics. For example, under Plaintiffs' analysis, Asians and Native Hawaiian/Pacific Islanders would be exempt from Texas hate crime laws. Dkt. 46-5, p. 59 (McCraw 000252) and Dkt. 46-6, p. 100 (McCraw 000363).

Plaintiffs' as-applied challenge regarding Blakey and other 18-20-year-old women fails because it subdivides Texans affected by the Challenged Provisions in a way that the Challenged Provisions, themselves, do not. Plaintiffs complain the Challenged Provisions single out women for "specially unfavorable treatment." Dkt. 58 at p. 2. But unlike the statute at issue in *Craig*, the Challenged Provisions do not distinguish between men and women—Texas treats its young men and women equally.

### b. *Hirschfeld I*

Plaintiffs also rely heavily on *Hirschfeld I*, a vacated Fourth Circuit opinion holding a Virginia age-based firearms regulation unconstitutional under the Second Amendment, and relying on *Craig*. 5 F. 4th 407 (4th Cir. 2021). *Hirschfeld II* vacated *Hirschfeld I*. *Hirschfeld II*, 14 F.4th 322 (4th Cir. 2021).

Plaintiffs quote *Hirschfeld II*'s suggestion that *Hirschfeld I* will prove useful to future courts. Dkt. 58., p. 9; *Hirschfeld II*, 14 F.4th at 328. But *Hirschfeld II* cites no authority for the suggestion that a vacated opinion may be used so. In contrast, the *Hirschfeld II* concurrence notes that vacated opinions have "no legal value," "lose precedential value," "do not even bear the label of dicta," and are no more persuasive than "newspaper editorials." *Hirschfeld II*, 14 F.4th at 328 (Wynn, J., concurring) (citing *In re Naranjo*, 768 F.3d 332, 344 n.15 (4th Cir. 2014) (quoting *In re Grand Jury Matter*, 926 F.2d 348, 350 (4th Cir. 1991) and *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 n.10 (4th Cir. 1993) (panel

opinion vacated upon grant of rehearing *en banc* has "no precedential value")). The Fifth Circuit treats vacated opinions the same way. *See Comey v. Murphy Oil USA, Inc.*, 718 F.3d 460, 468 (5th Cir. 2013) ("Once the panel decision is vacated, it is of no precedential value.").

### 3. *Empirical Data Show the Challenged Provisions Pass Intermediate Scrutiny*

Plaintiffs obfuscate around the histrionics of their Complaint, which proclaimed that young women commit violent crimes at very low rate. When McCraw pointed out people of any sort commit violent crimes at very low rate, Plaintiffs argued that young women are therefore no different from anyone else, and should not have to bear the burden of criminal provisions. Dkt. 46, pp. 17-18; *cf.* Dkt. 58, p. 21.  This line of reasoning would eviscerate statutes outlawing violence: precious few demographic subdivisions would be subject to statutes outlawing violence, as precious few people of any sort commit violent crimes.

The operative metric is not whether young women commit large numbers of violent crimes in the aggregate, but the rate at which they do so compared to their older counterparts. That is the analysis undertaken in *McCraw I* and *BAFT*, and that analysis applies to Plaintiffs' so-called as-applied challenge to the extent of their reach. *McCraw I*, 719 F.3d at 347-49; *BATF*, 700 F.3d at 207-11; *see also Bucklew*, 139 S.Ct. at 1128 (labeling a claim as "facial" or "as-applied" does not change the meaning of the Constitution); *Reed*, 561 U.S. at 194 (claims seeking relief beyond the plaintiffs bringing claims must satisfy facial analysis to the extent they go beyond) (citing *Stevens*, 559 U.S. at 472-73)).

Women aged 18 to 20 are roughly as likely to be arrested for violent crimes compared to their older counterparts as are men aged 18 to 20 compared to their older counterparts. Dkt. 46, p. 19 (citing Dkt. 46-3, pp. 215-18; Dkt. 46-4, pp. 297, 299). These comparative rates were enough for the Challenged Provisions to survive intermediate scrutiny of the facial claims in *McCraw I* and *BAFT*. *See id.*; *see also* McCraw, 719 F.3d at 349; *BAFT*, 700 F.3d at 211. Because those rates hold when broken down by gender—assuming such demographic subdivision is appropriate—those rates are enough for

9

the Challenged Provisions to survive intermediate scrutiny of Plaintiffs' putative as-applied claim.

Plaintiffs argue that McCraw offers no support for analyzing statistical data this way, but it is precisely the analysis undertaken by *BAFT* and *McCraw I*. If Plaintiffs can subdivide those affected by the facially-neutral Challenged Provisions into preferential sub-demographics, then those sub-demographics must undergo the same analysis undertaken by *BAFT* and *McCraw I*: those regulated by the Challenged Provisions compared to their older counterparts. Plaintiffs ask this Court to ignore Fifth Circuit precedent and undertake an entirely novel statistical analysis. The Court should decline to do so, and dismiss Plaintiffs' claims.

## CONCLUSION

Accordingly, McCraw respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment in its entirety. McCraw further requests all other relief to which he is justly entitled both in law and in equity.

Respectfully submitted:

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief, General Litigation Division


*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Texas Bar No. 24060998
Assistants Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station

10

>Austin, Texas 78711-2548
>Phone: 512-463-2120
>Fax: 512-320-0667
>Ryan.Kercher@oag.texas.gov
>
>**Counsel for Defendant**
>**Steven McCraw**

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2022, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

>*/s/ Ryan G. Kercher*
>RYAN G. KERCHER

11