IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS FORT
WORTH DIVISION

| | |
|---|---|
| AIDAN ANDREWS, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) CASE NO. 4:21-cv-01245-P |
| STEVEN MCCRAW, et al., | ) District Judge Mark T. Pittman |
| Defendants. | ) ) ) ) |

**<u>PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT</u>**


R. Brent Cooper
Texas Bar No. 04783250
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, TX 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540

David H. Thompson
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com
Admitted *pro hac vice*

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

                                               **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION .....................................................................................................................1

ARGUMENT .............................................................................................................................2

I.  No Binding Fifth Circuit Precedent Controls This Court's Step-One Analysis. ................2

II.  Plaintiffs' Second Claim Is an As-Applied Challenge Presenting an Open Question.........4

III.  Under Fifth Circuit Precedent, the Carry Ban Is Unconstitutional As Applied
    to Blakey. .............................................................................................................................6

    A.  Plaintiffs' As-Applied Challenge Is Not A Disparate Impact Claim........................7

    B.  *Craig* Is Binding and *Hirschfeld I* Is Persuasive Authority Supporting
      Plaintiffs' Claim......................................................................................................9

    C.  Crime Statistics Prove that Applying the Carry Ban to 18-to-20-Year-Old
      Women Unconstitutionally Burdens the Right to Bear Arms. ..............................11

CONCLUSION........................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                               **Page**

*Binderup v. Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016) ............................................................6, 7, 9

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ...........................................................................5, 6

*Craig v. Boren*, 429 U.S. 190 (1976)..............................................................................................7

*Doe v. Reed*, 561 U.S. 186 (2010) ..................................................................................................4

*Hatfield v. Barr*, 925 F.3d 950 (7th Cir. 2019)...............................................................................9

*Hirschfeld v. BATFE*, 5 F. 4th 407 (4th Cir. 2021)............................................................6, 7, 10, 13

*In re Cao*, 619 F.3d 410 (5th Cir. 2010) .........................................................................................6

*In re Ultra Petroleum Corp.*, 28 F.4th 629 (5th Cir. 2022) ............................................................3

*Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717 (5th Cir. 2004) .................................................3

*Lewis v. Casey*, 518 U.S. 343 (1996)..............................................................................................9

*Mance v. Sessions*, 896 F.3d 699 (5th Cir. 2018) ...........................................................................4

*McCullen v. Coakley*, 573 U.S. 464 (2014) ....................................................................................4

*Melot v. Bergami*, 970 F.3d 596 (5th Cir. 2020)...........................................................................11

*Nat'l Rifle Ass'n, Inc. v. BATFE*, 714 F.3d 334 (5th Cir. 2013).......................................................9

*Nat'l Rifle Ass'n of Am., Inc. v. BATFE*, 700 F.3d 185 (5th Cir. 2012) .................1, 2, 6, 7, 11, 12

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338 (5th Cir. 2013) ...............................1, 2, 3

*Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003)............................................................................7

*Tyler v. Hillsdale Cnty. Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016)........................................8, 9

*United States v. McGinnis*, 956 F.3d 747 (5th Cir. 2020) ..........................................................6, 9

*United States v. Segura*, 747 F.3d 323 (5th Cir. 2014)..................................................................3

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981).....................................................................3, 4

**INTRODUCTION**

Plaintiffs are 18-to-20-year-old adult citizens and organizations that count those citizens among their members. They have brought this suit to vindicate their Second Amendment right to carry handguns in public for lawful purposes. Defendants Director McCraw and District Attorneys Smith and Glaser moved for summary judgment and Plaintiffs cross-moved in opposition, arguing that while Count I of the Complaint is foreclosed by Fifth Circuit precedent, Count II remains an open issue and this Court should grant summary judgment in Plaintiffs' favor. Defendant Smith filed a brief reply in support of his motion for summary judgment, Def. J. Brett Smith's Reply to Pls.' Resp. in Opp'n to Summ. J., Doc. 60 (Apr. 14, 2022), but only the Director responded to Plaintiffs' motion, Def. Steven McCraw's Br. in Supp. of Resp. in Opp'n to Pls.' Mot. for Summ. J., Doc. 62 (Apr. 15, 2022) ("Opp'n").

Director McCraw makes several arguments opposing entry of summary judgment on Count II, but none are persuasive. First, despite clear statements to the contrary, he insists that the decisions in *National Rifle Association of America, Inc. v. BATFE*, 700 F.3d 185 (5th Cir. 2012) ("*NRA I*") and *National Rifle Association of America, Inc. v. McCraw*, 719 F.3d 338 (5th Cir. 2013) ("*McCraw*") held that 18-to-20-year-olds are categorically outside the scope of the Second Amendment. But those cases specifically declined to rest their holding on that conclusion and their analysis of the issue is only dicta. Second, he suggests that even Plaintiffs' Count II—challenging the Carry Ban as-applied to 18-to-20-year-old women—is really a facial challenge. But because it challenges enforcement of the law as to only some of the individuals against whom it may be enforced, based on characteristics of those individuals that make enforcement unconstitutional, Plaintiffs have pleaded a proper as-applied claim. Third, the Director offers several reasons why, even if not foreclosed by *NRA I* and *McCraw* and even if properly classed as an as-applied claim,

1

he thinks Plaintiffs' Count II must fail, including reiterating his belief that Plaintiffs have stated a disparate impact claim in disguise, that Plaintiffs' citations to caselaw are inapposite or non-binding, and that any analysis of the criminality of 18-to-20-year-old women must take place in the larger context of the lower criminality of women in general. These arguments likewise miss the mark.

Throughout his opposition, a theme emerges: The Director misunderstands the nature of Plaintiffs' alleged injury. Plaintiffs do not claim that the Carry Ban is sex-discrimination in disguise (as would be required in an equal protection challenge), but rather that the Carry Ban violates the Second Amendment rights of 18-to-20-year-old women without an appropriate justification for doing so. Barring 18-to-20-year-old women from carrying in public does not plausibly advance the State's asserted interest in curbing violent crime in a way that is at all tailored to that interest. The Carry Ban must be declared unconstitutional as applied and summary judgment awarded to Plaintiffs on Count II.

## ARGUMENT

### I. No Binding Fifth Circuit Precedent Controls This Court's Step-One Analysis.

In *NRA I*, although it was "inclined to uphold the challenged federal laws at step one of [its] analytic framework," the Fifth Circuit expressly declined to do so and "in an abundance of caution . . . . proceed[ed] to step two" where it "ultimately conclude[d] that the challenged federal laws pass constitutional muster even if they implicate the Second Amendment guarantee." 700 F.3d at 204. In *McCraw*, even as it followed *NRA I*, the panel underscored the limited nature of that case's conclusions about the step-one analysis of 18-to-20-year-olds's Second Amendment rights, writing "under circuit precedent [*NRA I*], we conclude that the conduct burdened by the Texas scheme *likely* 'falls outside the Second Amendment's protection.' " 719 F.3d at 347 (emphasis added). *McCraw* carried the analysis no further than its predecessor, explaining that

2

"the same concern about the 'institutional challenges in conducting a definitive review of the relevant historical record' " pushed it to "proceed to the second step of the analysis, just as the [*NRA I*] court did." *Id.* (quoting *NRA I*, 700 F.3d at 204). There is therefore no Fifth Circuit precedent restricting this Court's decision on whether 18-to-20-year-old adults have full rights under the Second Amendment. These statements are dicta which may be followed if persuasive but do not bind this Court to reach a particular outcome.

The Director argues these statements are not dicta because they "are not peripheral, and constitute explication of the governing rules of law," but that is wrong. The *McCraw* and *NRA I* panels certainly did analyze a question of law when considering the step one issue, but in both cases, that "rule of law" was explicitly *not* "governing" the result of the case. Furthermore, while the panel in *United States v. Segura*, 747 F.3d 323, 329 (5th Cir. 2014), ultimately concluded a prior decision was dicta and noted that decision "did not meaningfully consider" the issue raised, that is not dispositive for whether something qualifies at dicta; a panel cannot elevate to a holding an unnecessary discussion merely because it is thorough. Instead, the question is whether something may be "deleted without seriously impairing the analytical foundations of the holding;" in other words, it is dicta if it is not necessary to the result. *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004). Here, the Fifth Circuit itself said in both cases its conclusion regarding the step one analysis was *not* the foundation for its holding and in fact only an assessment of how it would "likely" resolve the issue if it had to. It was not the sort of "necessary prerequisite to [the] holding" that binds future courts. *In re Ultra Petroleum Corp.*, 28 F.4th 629, 641 (5th Cir. 2022). Rather, it was at most equivalent to a court's determination, at the preliminary injunction stage, that a party would "likely" succeed on the merits—a determination that is similarly not binding on any later court actually resolving the issue. *See Univ. of Texas v. Camenisch*, 451 U.S.

390, 394–95 (1981) ("[Camenisch] improperly equates 'likelihood of success' with 'success' . . . . [F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."). This Court is free to resolve the step-one issue in favor of Plaintiffs.

### II. Plaintiffs' Second Claim Is an As-Applied Challenge Presenting an Open Question.

The Director argues that both Count I and Count II are facial challenges and therefore foreclosed by *McCraw* and *NRA I* even if the Fifth Circuit's step-one analysis is dicta (because the step-two analysis is not). As to Count I, Plaintiffs have pleaded both a facial and an as-applied claim, but they recognize that either way Count I is foreclosed by precedent (while preserving the argument that such precedent should be overruled by a court competent to do so).[1] However, Plaintiffs' Count II, for which they seek a declaration that the Ban "violates the right to keep and bear arms . . . as applied to otherwise qualified 18-to-20-year-old women," is an as-applied claim that has never been presented to the Fifth Circuit. *See* Compl. 20–21, Doc. 1 (Nov. 9, 2021); *see also Mance v. Sessions*, 896 F.3d 699, 705 (5th Cir. 2018) ("[Plaintiffs] additionally challenge the federal laws, as applied to the Hansons *and similarly situated residents of the District of Columbia*. We consider those contentions to be as-applied challenges.") (emphasis added).

Arguing that Count II is a facial challenge, the Director invokes the Supreme Court's decision in *Doe v. Reed*, 561 U.S. 186, 194 (2010). But *Doe* demonstrates Plaintiffs are correct that Count II is *not* facial in the way that the challenges at issue in *NRA I* and *McCraw* were facial.

---

[1] Although it is foreclosed, Plaintiffs note one problem with the Director's opposition to their Count I claim. Plaintiffs never said that the State must employ "the least restrictive means" to advance its interest in order to pass intermediate scrutiny. Opp'n 4. Nevertheless, under intermediate scrutiny, and especially in light of its recent enactment of permitless carry for Texans 21-years-old and up, the State cannot justify (even under intermediate scrutiny) a flat ban on carriage unless it has "seriously undertook to address the problem with less intrusive tools readily available to it" or rejected those alternatives for good reason. *McCullen v. Coakley*, 573 U.S. 464, 494 (2014) (applying intermediate scrutiny).

4

In *Doe*, the Supreme Court addressed a challenge to Washington's public records act as applied to referendum petitions. In discussing the scope of the challenge, the Supreme Court stated that it was as applied "in the sense that it does not seek to strike the [act] in all its applications, but only to the extent it covers referendum petitions." *Id*. at 194. The challenge was facial, however, "in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions." *Id*. More importantly, however, the Court made clear that "the label is not what matters" but rather "plaintiffs' claim and the relief that would follow"—with the plaintiffs required to "satisfy our standards for a facial challenge to the extent" of the reach of their claims. *Id*.

Applying *Doe*, it is clear that the nature of the claim presented by Count II is not the same as the claims at issue in *NRA I* and *McCraw*. Those cases sought injunctions against applying restrictions on 18-20-year-olds purchasing and carrying firearms against 18-20-year-olds *generally*. The plaintiffs in those cases thus were required to show that the laws were unconstitutional as applied to 18-20-year-olds *generally*, which the Fifth Circuit held they failed to do. Here, by contrast, Plaintiffs in Count II seek an injunction against applying Texas's Carry Ban against 18-20-year-old *women*, and therefore they must show it is unconstitutional as applied to 18-20-year-old *women*. That is not an inquiry that *NRA I* or *McCraw* undertook, because the claims in those cases were not limited in this way. In other words, the claim in Count II is as applied in a critical way that the claims in *NRA I* and *McCraw* were not. It therefore follows that regardless of the label put on Count II, the nature of the claim is different than that presented in *NRA I* and *McCraw* and therefore the outcome is not controlled by those cases.

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019), which the Director cites as foreclosing Plaintiffs' from bringing an as-applied challenge subject to a different analysis than that employed

5

by the Fifth Circuit in *McCraw* and *NRA I*, Opp'n 5–6, only confirms that this case is not foreclosed by those decisions. Consistent with *Doe*, *Bucklew* states that "[t]he facial/as-applied distinction affects *the extent to which* the invalidity of a statute need to be demonstrated, not the *substantive rule of law* to be used." 139 S. Ct. at 1128 (quotation marks omitted). Blakey concedes, for the purpose of her challenge, that the substantive rules of law laid out in *McCraw* and *NRA I* should govern her challenge, but the analysis is nevertheless different because Blakey only seeks to show the Ban is unconstitutional as applied to 18-to-20-year-old women, not 18-to-20-year-olds generally.

In effect, the Director argues that because the Fifth Circuit has upheld the Carry Ban against a facial challenge, Plaintiffs' as-applied challenge is foreclosed. The Fifth Circuit has said just the opposite. *See In re Cao*, 619 F.3d 410, 430 (5th Cir. 2010) ("[I]t is well-established that the facial upholding of a law does not prevent future as-applied challenges."). In fact, the Fifth Circuit has specifically noted in the context of a Second Amendment challenge under the two-step *NRA I* framework, that precedent addressing a facial challenge "does not foreclose the possibility of a successful as-applied challenge." *United States v. McGinnis*, 956 F.3d 747, 759 (5th Cir. 2020); *see also Binderup v. Att'y Gen.*, 836 F.3d 336, 350 (3d Cir. 2016) (Ambro, J., plurality op.). Blakey is therefore entitled to challenge the Carry Ban on a narrower ground than was rejected by the Fifth Circuit in *McCraw* and to have those arguments considered by this Court.

### III. Under Fifth Circuit Precedent, the Carry Ban Is Unconstitutional As Applied to Blakey.

Under *NRA I*, the Court must analyze Plaintiffs' Count II claims in two steps. First, the Court asks whether a law "impinges upon a right protected by the Second Amendment." 700 F.3d at 194. As discussed in Plaintiffs' motion for summary judgment, "the Constitution's text, structure, and history affirmatively prove that 18-year-olds are covered by the Second

6

Amendment." *Hirschfeld v. BATFE*, 5 F. 4th 407, 440 (4th Cir. 2021) ("*Hirschfeld I*"), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021) ("*Hirschfeld II*"); Pls.' Br. in Supp. of Mot. for Summ. J., at 7–12, Doc. 58 (Mar. 18, 2022) ("Pls.' Br."). Therefore, circuit precedent dictates that the Carry Ban must be analyzed under intermediate scrutiny and the State must "demonstrate a 'reasonable fit' between the challenged regulation and an 'important' government objective." *NRA I*, 700 F.3d at 195. This it cannot do. As explained in Plaintiffs' motion for summary judgment, women between 18 and 20 are extremely unlikely to commit violent crime—only 0.13% of 18-to-20-year-old women were arrested for violent crime in 2019 and just 0.0019% were arrested for murder or nonnegligent homicide. *See* Pls.' Br. 16–17. These statistics prove that being an 18-to-20-year-old female is a poor proxy for violent criminality and therefore Defendants are not justified in enforcing the Carry Ban against them. *See Craig v. Boren*, 429 U.S. 190, 204 (1976).

### A. Plaintiffs' As-Applied Challenge Is Not A Disparate Impact Claim

In response, the Director reiterates his argument that Plaintiffs are really asserting a disparate impact claim, but as Plaintiffs explained in their earlier briefing on this topic, *see* Pls.' Br. 19–20, they *do not allege*—as is the hallmark of a disparate impact claim—that the Carry Ban is disguised gender discrimination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) ("[D]isparate impact claims 'involve . . . practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another.'") (quotation marks omitted). Rather, Plaintiffs claims that the Carry Ban burdens 18-to-20-year-old women in the exact same way it burdens 18-to-20-year-old-men, but that the burden is particularly unjustified as-applied to the former group. This is a paradigmatic as-applied challenge under intermediate scrutiny, in which a Court must ask whether the Plaintiffs' "particular circumstances remove them from the constitutional sweep of [the Carry Ban]." *Binderup*, 836 F.3d at 346 (Ambro, J., plurality op.). In effect, here that means that the Court must ask, in light of the State's goal of reducing

7

violent crime, is there a "reasonable fit" between that goal and enforcing the Carry Ban against 18-to-20-year-old women specifically? Given the incredibly low levels of violent criminality among that group (and especially in light of their heightened risk of being victimized by violent crime), the answer must be no. *See* Pls.' Br. 16–18.

Nevertheless, the Director claims that what Plaintiffs are actually arguing is "that fewer women commit violent crimes, and the facially neutral Challenged Provisions therefore unjustifiably impact more non-violent women than they do non-violent men. That's a disparate impact claim." Opp'n 6. But that is *not* Plaintiffs' claim. Plaintiffs do not allege that the law is unconstitutional because it unfairly leaves more non-felonious women than men without the ability to carry a firearm for self-defense. The fundamental mistake that the Director makes throughout his brief is about the *source* of Plaintiffs' asserted right. The issue is not that the law treats men and women unequally in violation of a requirement of fairness enshrined in the Equal Protection Clause. Rather, Plaintiffs claim that they are adult Americans who presumptively are entitled to full rights under the Second Amendment, but that Texas has deprived them of a key component of that right by barring them from carrying handguns in public. That restriction must be justified by proof that the Carry Ban is "reasonabl[y] fit" to an "important" government objective. Plaintiffs' arguments regarding the low rates of violent criminality among 18-to-20-year-old women do not show, somehow, that more women are unfairly hurt by the law, but that the restriction on their rights does not "fit" the State's interest as it must to pass Second Amendment scrutiny. Count II therefore is no more a disguised equal protection claim than is an as-applied claim on behalf of a non-violent felon or a person with a long-ago episode of mental illness against a firearm disability, which courts have consistently analyzed as Second Amendment claims, not equal protection claims. *See Tyler v. Hillsdale Cnty. Sheriff's Dept.*, 837 F.3d 678, 681 (6th Cir. 2016) (en banc)

8

(Gibbons, J., lead op.) (mental illness); *Hatfield v. Barr*, 925 F.3d 950, 951 (7th Cir. 2019) (non-violent felonies); *McGinnis*, 956 F.3d at 751 (domestic violence orders); *Binderup*, 836 F.3d at 343 (Ambro, J., plurality op.) (misdemeanors).

Finally, there is nothing "bizarre," Opp'n 6–7, about Plaintiffs' distinguishing their theory of constitutional injury from Equal Protection cases while also citing to some cases from that context. The Director takes issue with two such citations, but neither indicates that Plaintiffs are trying to sneak in equal protection analysis. *Craig*, as discussed in greater detail below, applied an "intermediate scrutiny" standard. Intermediate scrutiny, of course, applies to this Second Amendment challenge under *NRA I*, and in fact several Fifth Circuit judges endorsed applying *Craig*'s analysis to the similar challenge in that case. *See Nat'l Rifle Ass'n, Inc. v. BATFE*, 714 F.3d 334, 346 (5th Cir. 2013) (mem.) (Jones, J., dissental) ("*NRA II*"). And Plaintiffs only rely on *Lewis v. Casey*, 518 U.S. 343, 347 (1996) to distinguish their challenge from the disparate impact paradigm in which the Director is determined to pigeonhole them.

### B. *Craig* Is Binding and *Hirschfeld I* Is Persuasive Authority Supporting Plaintiffs' Claim.

Plaintiffs rely on *Craig* because it applies an intermediate scrutiny standard to a law that, like the Carry Ban, sought to limit the activities of an entire class of people based on the propensity of a small portion of that class to commit crimes. In *Craig*, the class of people who were limited were 18-to-20-year-old men, who could not buy 3.2% beer because Oklahoma believed they were disproportionately likely to be arrested for, killed by, or injured by drunk driving. 429 U.S. at 200–01. Indeed, Oklahoma was right about that. The Supreme Court accepted that just 0.18% of females in that age group had been arrested for drunk driving when fully 2% of males of the same age had been arrested in the same time period, but it nevertheless held that "[w]hile such a disparity is not trivial in a statistical sense, it hardly can form the basis for employment of a gender line as a

9

classifying device . . . . if maleness is to serve as a proxy for drinking and driving, a correlation of 2% must be considered an unduly tenuous fit." *Id.* at 201–02. The issue here is the same. Texas has drawn a dividing line based on age, between some adults with full rights regarding firearms and others who are barred (in almost every circumstance) from carrying them in public for self-defense. Plaintiffs have challenged the law as applied to 18-to-20-year-old women alone, and so the State must show that it is justified in enforcing the Ban against those women by illustrating a "reasonable fit" between that enforcement and its goal of curbing violent crime. *Craig* proves there is no such fit because the 2% fit that the Supreme Court rejected in *Craig* was considerably better than the 0.13% fit at issue here.

McCraw insists Plaintiffs are misapplying *Craig*. He argues that *Craig* invalidated a statute that facially discriminated based on gender, whereas the law here is facially gender neutral, so it would be inappropriate to read *Craig* to endorse creating divisions where the law did not contemplate them. Opp'n 7. But, as explained above, focusing on contested applications of a statute is the proper function of an as-applied challenge and Plaintiffs are merely seeking to hold the State to its burden in showing that the Carry Ban is justified in its application against women. *Craig* did not make such as-applied challenges improper and in fact it provides a model for this Court's analysis. In any event, McCraw is wrong to suggest it is somehow inappropriate to treat men and women differently in this area—after all "[t]reating the sexes differently. . . receive[s] intermediate scrutiny" just the same as this Second Amendment challenge—so there is no reason that, if the distinction is justified based on the Second Amendment analysis Plaintiffs propose, it would not be equally defensible against some future Equal Protection challenge on behalf of 18-20-year-old men were the Court to rule in Plaintiffs' favor (which, again, is not at issue in this case). *Hirschfeld I*, 5 F.4th at 446. Indeed, given that the Fifth Circuit has held that barring 18-20-

10

year-olds generally from carrying firearms passes intermediate scrutiny (a conclusion that we dispute but that is binding here), it would not make any sense to find that limiting that bar to 18-20-year-old males, who are many times more likely to commit violent crimes than females in that age group, somehow fails intermediate scrutiny.

Regarding Plaintiffs' reliance on *Hirschfeld I*, the Director does not attempt to distinguish the case or to engage with its comprehensive analysis of relevant historical and statistical sources. Instead, he argues that because it has been vacated as moot the opinion has "no legal value" and is "no more persuasive than [a] 'newspaper editorial[]." Opp'n 8 (quoting *Hirschfeld II*, 14 F.4th at 328 (Wynn, J., concurring). But Plaintiffs have never suggested *Hirschfeld I* had any binding authority in this case, only that it is thorough, well-researched, and correct, with all the persuasive value that comes along with those features. And unlike a newspaper editorial, it was drafted by Article III judges operating pursuant to their judicial oaths. Contrary to the Director's implicit suggestion that the Court cannot rely on such authority even when persuasive, there is no such restriction. The Fifth Circuit recently approvingly cited a "thoughtful opinion" from the Tenth Circuit even though it had been "vacated as moot on rehearing." *Melot v. Bergami*, 970 F.3d 596, 599 n.11 (5th Cir. 2020). Plaintiffs further note the many consistencies between the analysis performed in *Hirschfeld I* and Judge Jones's opinion in *NRA II*, another source of persuasive authority upon which this Court may properly rely in deciding these issues, and with which the Director likewise does not even attempt to engage on the substance.

### C. Crime Statistics Prove that Applying the Carry Ban to 18-to-20-Year-Old Women Unconstitutionally Burdens the Right to Bear Arms.

As Plaintiffs explained in their motion for summary judgment, 18-20-year-old women are exceedingly unlikely to commit violent crime, so the State cannot "demonstrate a 'reasonable fit' between the challenged regulation and an 'important' government objective" when applying it

11

against them. *NRA I*, 700 F.3d at 195; *see* Pls.' Br. 16–17. The Director makes two arguments in opposition, but neither can overcome the plain lesson of these statistics.

  First, the Director argues that Plaintiffs' reasoning—that if 18-to-20-year-old women are not especially violent there is no justification for limiting their rights to carry firearms—"would eviscerate statutes outlawing violence: precious few demographic subdivisions would be subject to statutes outlawing violence, as precious few people of any sort commit violent crimes." Opp'n 9; *see also id.* at 8 (granting relief will "make Swiss cheese out of every criminal statute by requiring loopholes for any number of subdivisible demographics" and "exempt from Texas hate crime laws" "Asians and Native Hawaiian/Pacific Islanders"). This is difficult to understand; of course laws "outlawing violence" do not implicate a constitutionally protected right and the State does not have to justify the sweep of those laws as-applied to each individual as it does here. For that matter, *this statute* does not outlaw violence. The Carry Ban outlaws carrying handguns by a small subset of the population on the theory that depriving them of their Second Amendment rights will result in an overall reduction of violent crime. That sort of statute, unlike say a prohibition on brandishing or assault with a deadly weapon, must be justified, as applied to Plaintiff Blakey and those similarly situated, under intermediate scrutiny. Furthermore, to the extent a criminal law *does* implicate a constitutional right, the Fifth Circuit has already implicitly rejected this concern when it noted in *McGinnis* that it was open to future as-applied challenges to the criminal restrictions on firearm ownership contained in 18 U.S.C. § 922(g).

  Second, the Director repeats his assertion that if the violent tendencies of 18-to-20-year-old women are to be judged, they must be judged by comparison to other women, and for support he cites *NRA I* and *McCraw*, which he says established a precedent for assessing "those regulated by the Challenged Provisions compared to their older counterparts." Opp'n 10. However, *NRA I*

12

and *McCraw* involved facial challenges and did not decide how to review an as-applied challenge like this one. Nevertheless, *NRA I* and *McCraw* are both entirely consistent with comparing the group mounting the as-applied challenge to the *entire* population of those not subject to the Carry Ban. Here, that analysis demonstrates that 18-to-20-year-old women are not more prone to violence than the unregulated group and so no special burden on their Second Amendment rights can be justified. *See* Pls.' Br. 16–17. That is because to justify its denial of rights to 18-20-year-old women, the State at a minimum must show that there is something that justifies burdening them specifically. If 18-20-year-old women are not particularly violent when compared to Texans who retain their right to carry under State law, the State cannot possibly justify the restriction at issue here.

Perhaps more importantly, the act of comparing one group against another, which the Director fixates on, is only helpful for demonstrating the unreasonable nature of the State's position on 18-to-20-year-old women carrying handguns. As *Craig* makes clear, "[t]he question is not about the disparity between groups or the total crime each group commits, but the percentage of the group that uses a gun in an impermissible manner." *Hirschfeld I*, 5 F.4th at 446. Here, the State's justification fails as a matter of law because being an 18-to-20-year-old woman is an extremely poor "proxy" for likelihood to commit a violent crime and the Carry Ban cannot be constitutionally applied against them.

Finally, even if Plaintiffs were to conduct the analysis in the comparative and limited way that the Director suggests, it would still show that 18-to-20-year-old women do not deserve this special treatment. Women 18-to-20-years-old commit violent crimes generally, and murder and nonnegligent manslaughter specifically, at a *lower* rate than women 21-to-24-years-old do. *See* Ex. 4, Off. of Juvenile Just. & Delinquency Programs, *Arrest rates by offense and age group*, *2019*

13

*(rates per 100,000 in age group), Gender: Females*, U.S. Dep't of Just., https://bit.ly/3zmorNV, App. 11–12. If the Second Amendment applies to them, the State cannot justify, under its own proposed analysis, stripping 18-to-20-year-old women of their rights while leaving the rights of the women in the most violent age group intact.

## CONCLUSION

The Court should grant Plaintiffs' cross-motion for summary judgment.

Dated: April 29, 2022                                   Respectfully submitted,

                                                        */s/ David H. Thompson*
                                                        David H. Thompson*
R. Brent Cooper                                         Peter A. Patterson*
Texas Bar No. 04783250                                  William V. Bergstrom*
COOPER & SCULLY, P.C.                                   COOPER & KIRK, PLLC
900 Jackson Street, Suite 100                           1523 New Hampshire Avenue, N.W.
Dallas, Texas 75202                                     Washington, D.C. 20036
Telephone: (214) 712-9500                               (202) 220-9600
Telecopy: (214) 712-9540                                (202) 220-9601 (fax)
                                                        dthompson@cooperkirk.com
                                                        ppatterson@cooperkirk.com
                                                        wbergstrom@cooperkirk.com
                                                        *Admitted pro hac vice

                                                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2022, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

                                                        */s/ David H. Thompson*
                                                        David H. Thompson